HOFFMAN, Special Administrator, Plaintiff and Respondent, vs. LABUTZKE, Defendant and Respondent: WESTERN CASUALTY & SURETY COMPANY, Defendant and Appellant.

*December 5, 1939—January 16, 1940.*

368

370

*Chas. H. Avery* of Antigo, attorney, and *M. G. Eberlein* of Shawano of counsel, for the appellant.

For the respondent Joseph Hoffman there was a brief by *Fischer, Brunner & Strossenreuther* of Shawano, and oral argument by *Ovid Strossenreuther.*

*Orville S. Luckenbach* of Shawano, for the respondent Lester Labutzke.

FOWLER, J.   As appears from the foregoing statement of facts, the case involves an action by the administrator of the estate of Victor Hoffman, a deceased person, who was a guest in an automobile driven by the defendant Labutzke and insured by the defendant Insurance Company, and who died as a result of injuries sustained in the overturning of the automobile, to recover under the death-by-wrongful-act statute, sec. 331.03, Stats., for the damages sustained by the father of the deceased as a result of the death and for the pain and suffering resulting to the deceased from his injuries.   Judgment went against the defendants.   The appellant Insurance Company assigns as error, (1) the refusal of the trial court to set aside the verdict of the jury and permit it to plead by supplemental complaint and have a new trial of the issue of breach of conditions of its policy of insurance for want of co-operation and making false statements by Labutzke as the additional assured under the policy; both defendants assign as error denial of a new trial on the further grounds, (2) that the award of damages was excessive; (3) error of the court in instructing the jury; and (4) in the interest of justice.

(1) On the hearing of the motion for permission to plead breach of the conditions of the policy by Labutzke and a new trial of that issue, the court took oral testimony. As more fully appears from the statement of facts preceding the opinion, the company claimed as ground for its motion, (1) that after the trial the assured told Mr. Aschenbrener, the attorney who appeared in the action and tried the case for both the assured and the company, that he falsified in his statement to the company, on his adverse examination, and on the trial in stating and testifying that as he came to the turn in the road another automobile was coming toward him on his side of the road and he went off the road in turning left to avoid a head-on collision, whereas in fact there was no other automobile present. In course of the hearing the agent of the company testified that Aschenbrener reported to him after the trial that the assured had made a statement to him but was not permitted to state what the assured said because it was hearsay, and the attorney was not required to testify what the assured said to him because it was a confidential communication prohibited by sec. 325.22, Stats. Thus there was nothing before the court to show that the assured after the trial had repudiated his statements and testimony as to the circumstances of the accident, except the affidavit first presented in support of the motion. If the rejected oral testimony was incompetent to prove the fact of repudiation so was the affidavit. And if the ruling of the court in rejecting the oral testimony of the attorney was correct, the claimed repudiation after the trial by the assured of his statements and testimony could not be shown upon a new trial, as the assured could not be required to answer as to the claimed repudiation because it would constitute an admission by him of his commission of the crime of perjury.

There are thus raised two questions under (1) : (a) Does the affidavit presented in connection with the motion state a defense to the suit against the company because of want of

co-operation or breach of the conditions of the policy by the assured? and if it does, (b) Does the rejection of the testimony of the attorney of the parties as to the assured's communication to him render erroneous the ruling of the court upon the motion for permission to set up the issue by a supplemental pleading and have a trial of that issue?

(a) The affidavit accompanying the motion for leave to file a supplemental complaint is set out in the statement preceding the opinion. It is not urged that it does not state facts sufficient to void the policy unless for failure to show that the statements and testimony of Labutzke were not prejudicial because, although false, they were favorable to the company as tending to make out a defense on the merits. This point seems to be sufficiently covered by what is said in *Hunt v. Dollar,* 224 Wis. 48, 53, 271 N. W. 405. If the misstatements of Labutzke were such "as to tend to lead the insurer to conclude that it was justified in defending the case on the merits, whereas, if the facts . . . had been disclosed, it might well have concluded to adjust the damages rather than stand the expense of a trial and the chance of an enhanced award because of the assured's conduct" in attempting to shift blame for the accident on an undisclosed and nonexistent person, a case of avoidance is made. As said in *Buckner v. General Casualty Co.* 207 Wis. 303, 309, 241 N. W. 342, co-operation means "that there shall be a fair, frank, and truthful disclosure of information reasonably demanded by the insurer for the purpose of enabling it to determine whether or not there is a genuine defense." Clause 6 of the instant policy required that the assured's notice of the accident should contain "reasonably obtainable information respecting the time, place and circumstances of the accident." This implies that the information given should not be knowingly false. Clause 7 required that the "insured shall co-operate with the company and, upon the company's request, shall . . . assist in . . . securing

and giving evidence." This implies that the evidence secured or given shall not be knowingly false. Both clauses 6 and 7 are expressly made conditions of the policy, and the "No-action" clause 8 provides, "No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the conditions hereof." Breach of conditions voids the policy. See *Hunt v. Dollar, supra.* We consider that the affidavit sufficiently alleges that conditions 6 and 7 of the policy were breached by the assured and that the assured's false statements and testimony prior to the trial prejudiced the company.

(b) The most strenuously contested point of the case is whether Aschenbrener, the attorney for both defendants, was rightly excused from answering as to whether the assured stated to him after the trial of the case that there was in fact no other automobile present when he ran off the curve, and that his testimony and previous statement that he ran off the road in turning left to avoid a head-on collision with an automobile coming toward him on the west side of the road were false. The respondents claim that the communication was privileged under the statute cited and is properly rejected; the appellant that it is not, and that its rejection was error.

"325.22 *Communications to attorneys.* An attorney or counselor at law shall not be allowed to disclose a communication made by his client to him, or his advice given thereon in the course of his professional employment. *This prohibition may be waived by the client, and does not include communications which the attorney needs to divulge for his own protection, or the protection of those with whom he deals, or which were made to him for the express purpose of being communicated to another, or being made public."*

The first part of the statute above quoted was enacted into the statutes as sec. 4076, R. S. 1878. By sec. 19, ch. 523, Laws of 1927, the part in italics above was added. Several

cases involving the statute or the common-law rule came before the court prior to the amendment of the statute, but only one has come since, *Allen v. Ross,* 199 Wis. 162, 225 N. W. 831. It was held in the case cited that where an attorney represented both parties in drawing up their mutual and reciprocal wills, statements by them made to him in the presence of each other were not privileged under the statute. The ground of the holding was that communications so made were not confidential. This same consideration makes the statements made by the instant assured, in the presence of Aschenbrener and Walch, not privileged under the statute, and renders erroneous the rejection of Aschenbrener's testimony as to that conversation. More nearly to the point of privilege, as to the communication of the assured to Aschenbrener alone after conclusion of the trial, is the case of *Estate of Hoehl,* 181 Wis. 190, 197, 193 N. W. 514. A letter was received by the attorney for the administrator of the estate of a deceased person, stating that certain bonds of $10,000 par value belonged to the estate and directing him to draw up the inventory. The administrator failed to file an inventory and was directed by the court to do so. The administrator thereupon appeared by a different attorney, filed an inventory omitting the bonds and including property valued at only $1,000 and filed his resignation as administrator. The resignation was accepted. Hearing was thereupon ordered as to why the administrator had been required to file a bond for $11,000 if the estate consisted of only $1,000 worth of property. On this hearing the administrator's original attorney was called to testify as to the letter above referred to. He objected to testifying as to the letter on the ground that it was privileged under the statute. The court ruled that the letter was admissible, directed the attorney to produce it, and the attorney complied with the ruling. The ruling was sustained by this court on appeal on the ground that the attorney for the administrator was not the "private attorney" of the administrator, but was his attorney in a

"semipublic capacity." "His duty was to serve the estate and the court as well as the administrator. . . . In his relations to the estate and the court his duties were not confidential or private." This is, in effect, saying that the attorney was acting in a dual capacity; that he owed the duty to protect the estate as well as the administrator, and that because of his dual capacity and his conflicting duties the communication was not privileged. This is practically the same as was held in *State v. Rogers,* 226 Wis. 39, 51, 275 N. W. 910. It is there said, in effect, that "an attorney is under duty of loyalty to his client and is forbidden to disclose confidential statements made to him in that capacity," but he is "under a duty of loyalty to both parties," and it is "his duty to disclose to each whatever he discovers in relation thereto which affects the interests of each." In such case when one party "consents and requests that his attorney act as attorney for the other," his privilege under the statute "is waived." The company by the testimony of Aschenbrener directed him to put in answers to the complaint for the company and for the assured. The assured knew that Aschenbrener was acting as attorney for both him and the company and tacitly if not expressly consented thereto. Each waived the privilege of the statute as to reporting his communications to the other whenever those communications affected the interests of the other, under the rule of *State v. Rogers, supra,* and if each so waived it for like reason each waived it as to testifying in court as to such communications.

It follows that the court erred in rejecting the testimony of Aschenbrener as to what the assured said to him after the trial as to the presence of another car at the time of the accident. As the court rejected the testimony of Aschenbrener upon a mistaken view of the law that such testimony is barred by the statute, the case must be remanded for receiving the testimony of Aschenbrener as to the statements of the assured on both the occasions mentioned, and action by the court upon the motion under consideration in view of the

testimony Aschenbrener may give and the other evidence received bearing upon the matter of a trial on the new issue of failure to co-operate.

(2) (3) These two assignments, under the circumstances involved, go together. The excess of damages claimed is $2,500 for "loss of society" and $1,000 for "pecuniary loss." The statutory limit for "loss of society" is $2,500. Sec. 331.04 (2), Stats. The complaint asked the limit for this item and also asked $1,500 for pecuniary loss. The father of the deceased was seventy-five years old at the time of the son's death. His expectancy was 6.27 years. The son was living in the family home with the father and a married daughter to whom the father turned over his pension check as a retired employee of the Soo Railway Company of $25.14 per month for the support of himself and an incompetent adult daughter. The deceased was giving the father $1 a week for "spending money," and buying his clothes. The cost of the clothes was not given, nor was the quantity or kind thereof suggested. The father is a widower, and nine other children of the father survived the deceased. One of them had bought the father a pair of shoes during the preceding year. Such is the testimony on which the $2,500 and $1,000 were awarded to the father. The court instructed the jury that "pecuniary loss" meant the contribution the deceased would make for the father's maintenance, and that in assessing damages for "loss of society and companionship" they should "determine upon the preponderance of the credible evidence the value in money to the plaintiff as a father of the society and companionship of the son, Victor Hoffman." Nowhere is there a statement that compensation for the loss sustained is the idea that must control and limit the assessment, unless the word "value" might be taken as the equivalent of compensation. The "value" of a thing, generally speaking, is what it will sell for, or what it may be purchased for. Society and companionship cannot be bought or sold.

The term "value" does not convey the idea of compensation, and is not suitable for use as a measure of damages for "loss of society and companionship." The court concluded the charge to the jury as follows:

"The plaintiff claims in this action $2,500 for loss of society and companionship, the sum of $1,500 for pain and suffering to Victor Hoffman, the sum of $1,500 for pecuniary loss to the plaintiff, $418.80 for doctor and hospital expenses, and $318 for funeral expenses, and no more. He does not ask for any verdict greater than that. Bearing in mind this limitation upon your finding you will consider the elements of damage to which I have referred and fix the amount, not exceeding $6,236.80 as a total, and these specified amounts asked as to each item as you *feel* or find from the evidence was reasonably proved."

What the plaintiff demanded in his complaint had no bearing whatever upon what sum would compensate the plaintiff either for loss of society or pecuniary loss. It had no place whatever in the charge. Saying to the jury that their total allowance was limited to $6,236.80 was likely to convey the idea that the recovery should be for that much at least. The conclusion of the charge was an invitation, or at least a suggestion, to the jury that they should or at least might go the limit of the demand of the complaint regardless of the idea that should control their assessment. The jury apparently accepted the suggestion, and applied it in assessing the damages for loss of society. We consider the concluding portion of the charge was erroneous and prejudicial to the defendants and entitles them to a new trial on the question of damages.

(4) Under the head of a new trial in furtherance of justice, the defendant Insurance Company assigns as errors (a), (b), and (c) following:

(a) The court should have submitted a question on assumption of risk. No such question was requested. Not having been requested it is to be taken as submitted to the

court and decided in such way as to support the judgment under sec. 270.28, Stats.

(b) The finding of the jury as to the negligence of Labutzke is not supported by the evidence. This claim is entirely without merit. We fail to see how the jury could have found on this issue other than they did.

(c) The deceased as matter of law assumed the risk incident to the speed of the car. There is no evidence of excessive speed until the car neared or reached the crest of the hill. Raddant testified that at that time the deceased "hollered, 'Take it easy Les.'" This is undisputed, unless by implication from the testimony of Labutzke that he did not hear such statement. At any rate the evidence supports the implied statutory finding of the court upon the question of assumption of risk above stated, and the defendants are not entitled to a new trial to have that question submitted to the jury.

From the above it follows that both defendants are entitled to a new trial of the question of damages, and that the Insurance Company is entitled to have Aschenbrener testify as to the communications of Labutzke to him after the trial and at the meeting of Walch, Aschenbrener, and Labutzke, hereinbefore referred to, and will be entitled to file a supplemental complaint to set up the issue of breach of conditions of the policy by Labutzke as the assured and to a trial of that issue in case Aschenbrener's testimony supports the affidavit of Walch as to Labutzke's repudiation of his testimony at the trial and his previous statements to the Insurance Company as to the involvement of another automobile in the accident.

*By the Court.*—The judgment of the circuit court branch of the county court is reversed, and the record is remanded for further proceedings in accordance with the opinion.