Elkey, Appellant, vs. Elkey and another, Respondents.

*February 13—March 12, 1940.*

For the appellant there were briefs by *North, Bie, Duquaine, Welsh & Trowbridge,* attorneys, and *John D. Kehoe* and *Alex Wilmer* of counsel, all of Green Bay, and oral argument by *Mr. Wilmer.*

For the respondents there were briefs by *Everson, Ryan & Hanaway* of Green Bay, and oral argument by *Chas. T. Hanaway* and *E. L. Everson.*

The following opinion was filed March 12, 1940:

FOWLER, J.    The plaintiff was injured when an automobile in which she was riding ran off a bridge across the Fox river in the city of Green Bay and fell sixteen feet onto the ice below.    Her husband was driving the car.    The plaintiff sues her husband and the carrier of the indemnity insurance on the car to recover for her injuries.    The case was tried to a jury, who by their special verdict found that the husband in driving the car "at and immediately before the time of the accident" was negligent as to lookout, and that the negligence thus found was the proximate cause of the plaintiff's injuries.    The jury assessed the plaintiff's damages at $1,000.    The plaintiff moved for judgment on the verdict.    The defendants moved the court to change the finding of the jury as to the husband's negligence as to lookout and as to proximate cause; and for judgment on the amended verdict dismissing the complaint.    The defendants' motion was granted.

The jury by their verdict also found that "at the time of and immediately prior to the accident," the husband did not "drive the automobile to the left over the center line of the roadway;" and did not "operate and manage the automobile without due regard to the traffic, surface, width of the highway, and the conditions then and there existing."

The only question before the court is whether the jury's findings of negligence as to lookout and of proximate cause are sustained by the evidence.    If under the evidence reason-

able men may differ as to the conclusion of ultimate fact to be drawn from it, the court erred in changing the findings of the jury. We are of the opinion that upon the evidence in the instant case reasonable men may differ, both as to the husband's lookout constituting negligence and as to the causal nature of that negligence. As sustaining that view we here state the evidence in detail. In only one respect is there any material dispute, and in connection with that we are required to adopt the version that tends most strongly to support the jury's conclusions.

The plaintiff sat on the front seat of the car between her husband and her sister. The car was traveling east. The streets were very slippery, and the car had skidded in rounding a corner shortly before reaching the bridge. The bridge was uniformly covered with a sheet of ice. It was 10:30 o'clock at night. The street lights shone upon the bridge and made it "look like glass." The sister remarked just before reaching the bridge that it "looked just like a mirror." The car was traveling fifteen to twenty miles per hour in its own lane of the bridge, and a bus was approaching from the opposite direction in its own lane. No other traffic was on the bridge. The bridge was thirty-eight feet wide between its sidewalks, and the sidewalks were eight feet wide. Just before the accident happened the husband inquired the time. The plaintiff fumbled with and looked at her watch trying to see the time, and the sister and the husband looked out of the frosted windows of the car trying to see a street clock in front of a store ahead of them to their left. A tight board fence ran along the outer edge of the sidewalk on the north side of the bridge, and the clock barely showed above the top of this fence. The left-side window of the car was less frosted than the windshield, and the husband was using that to get a better view of the clock. The sister was looking through the windshield. The sister could not see the clock, and when she turned her eyes back ahead of the car she saw

that it had turned toward the path of the approaching bus. The sister "hollered" at the driver, and he "quickly pulled the wheel to the right." While the husband was looking for the clock the car had traveled two sections of the bridge railing, about forty feet, according to the sister's testimony. When the husband pulled the wheel to the right the car went quickly over toward the fence. He then pulled the wheel to the left, and it "slewed all around the road," and went through the railing on the south side of the bridge. While the jury found that the car did not pass to the left of the center of the road while the husband was looking aside, the testimony is undisputed that it veered two or three feet to the left out of the line of travel it was maintaining when he looked aside and had theretofore maintained on the bridge. The jury's findings that the driver failed to keep a proper lookout, and that this caused the accident, but that he did not invade the left half of the road or operate the car "without due regard to the conditions," must be interpreted as meaning that the jury considered that the driver was not negligent in his efforts to straighten the course of the car after he discovered that it was headed toward the left, but that he was negligent in looking aside to see the clock, and that this negligence proximately caused it to run off the bridge.

From the facts above stated the jury quite properly inferred that the driver of the car failed to keep a proper lookout when he looked out of the side window of the car in an endeavor to see the clock, and that such failure caused the car to run off the bridge. The driver was fully apprised of the icy condition of the bridge and fully apprised of the likelihood of the car to slew if it was not kept in a straight line of travel. He had no difficulty in so keeping it either while on the bridge or before he reached it as long as he kept his eyes directed to the road ahead. It is true that a voluntary brief diversion of sight to the side while driving a car is not necessarily negligence as to lookout. Whether it is depends

on the circumstances, and under the circumstances here existing, if ever, a jury might properly find it was negligence. If the driver had kept his eyes so directed there would have been no deviation off the car's course of travel, no occasion to turn the wheel suddenly to the right to straighten its course, and no running off the bridge. There were no ruts on the bridge, or other noticeable inequalities of surface. The bridge was laterally level. There was nothing to cause the diversion from the car's course of travel but the driver's taking his eyes off the road ahead. While traveling fifteen to twenty miles per hour it took the instant car from one and a half to two seconds to travel forty feet, and the car traveling without anyone to direct its course for two seconds would necessarily require a straightening of its course in order to keep it from running off the bridge or into the path of the bus. So at least the jury might properly reason.

It would seem that no citation of authority is necessary to support the view above expressed. If it is, the time-honored rule as to proximate cause stated in *Deisenrieter v. Kraus-Merkel Malting Co.* 97 Wis. 279, 288, 72 N. W. 735, will suffice :

"It [proximate cause] is not necessarily the immediate, near, or nearest cause, but the one that acts first, whether immediate to the injury or such injury be reached by setting other causes in motion, each in order being started naturally by the one that precedes it, and altogether constituting a complete chain or succession of events, so united to each other by a close causal connection as to form a natural whole, reaching from the first or producing cause to the final result."

The driver's diversion of sight acted first and set in motion the other causes, each of which naturally set in motion the next in succession, and all together operated to produce the final result. The diversion of sight being negligent, the liability of the driver and the defendant insurer is established.

The defendants contend that the trial court considered that in the instant case the plaintiff assumed the risk of injury and therefore cannot recover. If the premise is correct the conclusion is, but the premise falling the conclusion falls with it. The plaintiff manifestly did assume the risk incident to the speed of the car and the icy condition of the streets and the bridge. But a guest does not assume the risk incident to negligent lookout of the host. *Poneitowcki v. Harres*, 200 Wis. 504, 228 N. W. 126. If the plaintiff at the time knew that her husband was not maintaining a lookout and had time to tell him to tend to his business in time to prevent the diversion of the car from its line of travel, she would then have assumed the risk incident to his failure of lookout. But there is no evidence that she did so know, or that there was time to act efficiently to prevent the diversion of the car or even protest. She was engaged in attempting to get the time from her own watch, and had not been able to get it before the sister "hollered." The trial judge's view that the plaintiff assumed the risk cannot operate to support the judgment, because it was founded on the erroneous assumption that the driver of the car was not negligent as to lookout, and the further erroneous assumption that if he was his negligence was not causal.

*By the Court.*—The judgment of the circuit court is reversed, and the record is remanded with direction to set aside the order amending the verdict and to enter judgment for the plaintiff on the verdict as returned by the jury.

The following opinion was filed June 4, 1940:

FOWLER, J. (*on motion to change mandate*). The case is up on motion to change the mandate, which reversed the decision of the trial court and directed entry of judgment for the plaintiff against the plaintiff's husband, driver of the automobile, and his insurer. The insurer now moves to change the mandate to provide that the trial court consider and determine a motion to that court made at the close of the

evidence, and in the absence of the jury, for a trial of the question whether the defendant driver breached the policy of insurance by failing to co-operate with the company, in that upon the trial he testified "materially contrary" to the statements made by him to the company when the company was investigating the circumstances of the accident involved. The company did not ask to amend its answer nor did it at any time of making the motion ask to be heard or for a ruling upon its motion, and the court made no ruling or comment. The case was thereafter argued and submitted to the jury, who returned their special verdict upon answers to which the plaintiff was entitled to judgment against both defendants. The court set aside these answers, and entered judgment for the defendant. Between the receipt of the verdict and the action of the court setting aside the answers therein and directing judgment for the defendant sixty days intervened. During this time the court took no action on the said motion, and the insurer did not request any action. If this of itself did not constitute a waiver of the motion, the company failed to take proper steps to secure a trial of the issue it sought to raise by its said motion. What the insurer wanted was a trial on that issue. This would be a new trial. If the insurer. desired a new trial it should have moved after return of the verdict in accordance with sec. 270.49 (1), Stats., "to set aside a verdict and grant a new trial . . . in the interest of justice; but such motion must be made and heard within sixty days after the verdict is rendered. . . . Such motion, if not decided within the time allowed therefor, shall be deemed overruled." The company having introduced the statements on which the claim for a new trial is based in evidence upon the trial the motion would be for a new trial on the minutes of the court as distinguished from the motions involved in *Osmundson v. Lang,* 233 Wis. 591, 290 N. W. 125, and *Hoffman v. Labutzke,* 233 Wis. 365, 289 N. W. 652. The company made no motion for a new trial after

verdict. Its only motion was for judgment notwithstanding the verdict or in the alternative to change the answers of the jury and enter judgment for the defendant on the amended verdict, the latter of which was granted. As the company did not make and bring to hearing a motion for a new trial within sixty days from the return of the verdict, it has lost its right to make such motion.

To change the mandate as requested by the movant would enable the company to avoid the requirement of the statute above cited. The motion made by the company before verdict does not seek a new trial on all the issues, and to make such a motion after verdict would not be seeking a new trial on all issues. But we consider that such a motion, if made at all, should be made after verdict instead of before, and the statute cited should be complied with and enforced.

*By the Court*.—The motion to change the mandate is denied with $25 costs.