EBERDT, Administratrix, Plaintiff and Respondent, vs. MUL-
LER and others, Defendants and Appellants: GENERAL
CASUALTY COMPANY OF WISCONSIN, Impleaded De-
fendant and Respondent.

*January 12—May 5, 1942.*

342

344

For the appellants there were briefs by *Sanborn, Blake & Aberg* and *Edwin Conrad,* all of Madison, and oral argument by *Mr. W. J. P. Aberg* and *Mr. Conrad.*

For the respondents there were briefs by *Donovan, Gleiss & Goodman* of Sparta, and oral argument by *William M. Gleiss* and *Leo J. Goodman.*

The following opinion was filed February 10, 1942:

FOWLER, J.    The action is brought by the administrator of the estate of Harvey L. Eberdt to recover under the death-by-wrongful-act statute and for injuries to the automobile of the deceased, who was killed in a collision of a heavily loaded truck driven by defendant Schotten coming from the south on a town road at a dead-end intersection at a sharp angle with a county trunk road on which the deceased was driving east.   The principal evidentiary facts are stated preceding the opinion.

The appellants make two general claims of error : (1) That as matter of law Schotten was not causally negligent, and (2) that the deceased was as matter of law contributorily negligent, because the evidence does not support the findings of the jury.   They claim that if (1) be sustained the judgment should be reversed and dismissal of the complaint directed; and if (1) be not sustained and (2) sustained there must be a new trial for apportionment of negligence under sec. 331.045, Stats.

One of the findings of the jury was that Schotten was causally negligent as to being on the wrong, his left, side of the road at the time of and immediately preceding the collision.   The place of the collision is definitely fixed by a gouge in the road, and so are the wheel tracks of the truck leading back from the place of collision.   The jury were warranted in finding that the truck was on the south half of the road and so close to the south edge as to prevent the deceased from passing him to his, Schotten's left, either by going directly east on the county trunk or by turning down the lead of the town road.   Thus the findings that Schotten was negligent

and that this negligence was causal are supported by the evidence. This being so, dismissal of the complaint cannot be directed.

(2) The position of the gouge in the road sufficiently establishes that the deceased was on his right side of the road at the time of the collision. As to his lookout, there was no evidence as to that except the testimony of Schotten. The jury were warranted in disbelieving Schotten as to this because he falsified as to his position on the road, and because he testified that when he entered the intersection he saw the deceased coming over a hilltop two hundred fifty feet west of the point of collision. At the first point at which Schotten could have seen the car of the deceased at the hilltop on account of his obstructed view west, Schotten was not more than thirty or forty feet from the point of collision, as might properly be inferred from applying a straightedge to the map in evidence of the roads drawn to scale. Schotten stated that he was traveling twenty to twenty-five miles per hour. A witness testified that Schotten admitted he was traveling forty miles per hour. Thus by Schotten's testimony the deceased would have traveled six to eight times as fast as Schotten, which would have made him travel from one hundred twenty to two hundred miles per hour. These figures, while not exact, are sufficiently approximate to warrant the jury in discrediting Schotten. The deceased could get a clear view of the county trunk road and a few feet down the town road when he arrived at the top of the lower of the two hilltops referred to in the statement of facts. Between the two hills was a dip so that his view was obstructed for a part of the distance between the two hilltops. The near hilltop was one hundred feet from the place of collision. Sec. 85.40 (4), Stats., required the deceased to be maintaining at this point a speed such that he could stop in half the distance he could see traffic approaching from the south. The jury

might infer that his speed was proper at this point. When twenty-five feet from the point of collision, he could see traffic from the south eighty feet away, and that might be considered by the jury to be maintaining a proper speed. This is about as far as we can reasonably go in basing inferences as to what the situation was. To go further would be resorting to speculation rather than reason. The burden of proof of contributory negligence was on the defendants. We are of opinion that the jury might properly infer that negligence of the deceased as to either lookout or speed was not proved, and that their findings in these respects are therefore sustained.

As to control and management of his car by the deceased, the most reasonable inference is that he did nothing at all. There were no skid marks to indicate application of his brakes and no tracks of his car to indicate that he turned either way from his straight course, and this tends to corroborate Schotten's statement that he came straight on. The deceased could hardly have avoided the collision by turning to his own left, for, as the position of the catapulted sand at the north edge of the road shows, the truck was headed to cross his line of travel at an angle. At any rate the jury were not compelled to infer that he had time in which to judge and move effectively to do so. It seems that here also the defendants have not sustained their burden of proof.

The appellants assign as ground for a new trial several other claimed errors which we will take up *seriatim*.

(a) The court refused to submit a question requested by the defendants inquiring whether the deceased was negligent under sec. 85.18 (1), Stats., for not yielding the right of way to the truck. The jury found that the truck driver's speed was excessive. If that finding is sustained then the deceased was under no statutory duty to yield the right of way to the truck and the refusal to submit the statutory question was not error.

We are of opinion that the jury's finding in this respect is sustained. Schotten was coming down a ten-foot grade with a truck loaded with sand, with his truck in fourth, next to high, gear going by his testimony twenty to twenty-five miles per hour. By the testimony of a witness he stated shortly after the collision that he was going forty miles per hour. He did not slacken his speed but on entering the intersection stepped on the accelerator to get power for making the upgrade to the west. By sec. 85.10 (22), Stats., the intersection here involved was the area between lines drawn from the north edge of the county trunk to the south edge of the town road at the west apex of the grass plot and a line drawn from the north to the south edge of the two roads where they merged. When the truck reached the intersection as thus fixed, Schotten could see traffic approaching from his left for only forty or fifty feet at most. Before he reached the intersection he could not see to his left as far as when he reached it. In view of sec. 85.40 (4), which provides that on approaching an intersection where the view is obstructed a driver must maintain a speed such that he can stop within half the distance he can see approaching traffic, we consider that the jury's finding that Schotten was negligent as to speed is sustained and refusing to submit the right of way question was not prejudicial.

(b) The appellants requested the court to instruct the jury in substance that since Schotten was in the intersection first he had the right to assume that the deceased would yield him the right of way, and that he had the right to assume that the deceased would yield it until he could or should have seen that he would not do so. This instruction was refused. The instruction was incorrect because it assumed as a fact what the jury might not find to be a fact. To make the instruction correct it should have used the word "if" instead of the word "since," and there was no error in refusing it. If the word "if" had been used instead of "since" refusal to give it would

have been error under the rule of *Loizzo v. Conforti,* 207 Wis. 129, 132, 240 N. W. 790, except for the fact that by his excessive speed Schotten had forfeited the right of way that he otherwise would have had and therefore had no right to assume that he had it.

(c) The appellants requested and the court refused an instruction to the effect that at highway crossings the indications readily suggest to a driver the likelihood of someone crossing his path. This seems so self-evident as to go without saying and that refusal to give it can hardly be considered error although like statement is made in the opinion in *Lardeau v. Johnson,* 203 Wis. 509, 234 N. W. 710. However it prefaced the following:

"Therefore, you are instructed that as the deceased . . . approached the intersection . . . he was charged with notice that someone might possibly cross his path and consequently . . . was charged with the duty of ordinary care as to lookout, having in mind that he was approaching an intersection."

The general instructions as to negligence were correct and made applicable to both drivers, and no specific instruction was given as to the negligence or as to specific duties under hypothetical conditions of either driver. The refused instruction if given would have borne only upon negligence of the deceased as to lookout. It should have been given under the rule of *Loizzo v. Conforti, supra,* had that been a jury question, but as there was no evidence to warrant a finding of negligence in that respect there was no occasion to give it.

(d) It is claimed that the court erred by in effect instructing the jury that "there is no speed limit in Wisconsin." Sec. 85.40 (1), (4), Stats., was read to the jury. In immediate context following the court stated:

"There is no actual speed limit provided by statute on highways outside of municipalities, villages and cities; in other

words there is no speed limit. The limit of speed is denominated here as specified in that statute which I have just read to you."

It is claimed that the clause "in other words there is no speed limit" carries the impression that there is no limit as to the rate of speed that must be maintained. We cannot see that it is subject to such construction. No intelligent jury could so interpret it. The instruction was therefore not erroneous, although we fail to perceive any reason for including it, and it might better have been omitted, and if anything about it was said it should have been that no statute limited speed to any stated number of miles per hour outside of cities or villages.

(e) It is claimed that the court erred in receiving and refusing to strike the testimony of the witness Fuenger as to what Schotten said as to his speed of forty miles per hour in turning into the county trunk road. It is claimed that because Schotten denied saying anything about his speed; that persons with Fuenger at the time testified they did not hear him say anything about his speed; that the witness did not know to whom Schotten addressed the statement; and that the witness first testified he did not tell anybody that Schotten made the statement until he testified on the witness stand and afterward testified that he told plaintiff's attorney of Schotten's statement two days before trial, the testimony should have been stricken as incredible. We are of opinion that the credibility of the testimony was for the jury and it was properly received.

(f) It is urged that the court erred in instructing the jury as follows:

"And it is further his [a driver's] duty to take all *reasonable* precautions by limiting his rate of speed and controlling his vehicle to avoid collision with any such other vehicle, person or object."

We see nothing wrong in this. Appellants claim that an identical instruction was held erroneous in *Schulz v. General Casualty Co.* 233 Wis. 118, 288 N. W. 803, as imposing an absolute duty to avoid collision. The instant instruction is saved from the error there involved by the use of the qualifying word "reasonable" not there used.

(g) The court instructed the jury that the maximum recovery of damages by a wife for the loss of society of her husband under the wrongful-death act is $2,500. Sec. 331.04 (2), Stats. This was erroneous. *Schulz Case, supra; Hoffman v. Labutzke,* 233 Wis. 365, 289 N. W. 652. However it is "not prejudicial if the assessment of the jury is proper, measured by the correct standard." *Schulz Case, supra,* p. 128. In the *Hoffman Case, supra,* p. 379, it was considered prejudicial for the award was claimed to be excessive, and the charge was considered to have invited the full amount of the award. In the instant case, although fourteen specific assignments of error are laid in appellants' brief, that the award is excessive is not among them. In the motions after verdict excessiveness of the verdict is laid as ground for a new trial, but it is not argued in the briefs. Under the circumstances we cannot say that the instruction was prejudicial.

(h) It is claimed that the court should have granted the appellants' motion for a new trial in the interests of justice. Had the trial judge granted a new trial on that ground we would have sustained him. But he stated in denying the motions after verdict that "there are a lot of physical facts there and some testimony." He evidently gave the point consideration. We cannot hold under these circumstances that it was an abuse of discretion not to grant a new trial on the ground last stated.

*By the Court.*—The judgment of the circuit court is affirmed.

The following opinion was filed May 5, 1942:

FOWLER, J. (*on motion for rehearing*).   The appellants have filed a motion for rehearing.   In their brief on the motion counsel find fault with the opinion in forty-two separate respects by actual count.   One of their complaints we find justified.   That one is the interpretation given in the opinion of sec. 85.10 (22), Stats., which reads:

"*Intersection*.   The area embraced within the prolongation of the lateral curb lines or, if none, then within the lateral boundary lines of two or more highways which join one another at an angle, whether or not one such highway crosses the other."

The statute should be interpreted as fixing the intersection as bounded by a quadrilateral made by the north line of the county trunk, a line extending the south line of the county trunk across the town road, and lines extending the two lateral lines of the town road across the county trunk.   This follows from the language of the statute itself, not because as argued by appellants, it is required by *Weiberg v. Kellogg,* 188 Wis. 97, 205 N. W. 896.   The *Weiberg Case* does not construe the statute, and therefore does not control its interpretation, as it was decided in 1925 and the statute was enacted by sec. 3, ch. 454, Laws of 1929.

Although the interpretation of sec. 85.10 (22), Stats., as it stands must be as above stated, we conclude that sec. 85.17 (2), relating to left turns at intersections, is impossible of application in situations such as were here involved. Examination of the accompanying plat will roughly indicate that situation, although it is not to scale, and will indicate it more clearly than is possible to describe it by words.

The lateral edges of the portion of the left lead of the town road surfaced for travel follow curved lines not parallel and diverge so that the prolongation—to follow the language of sec. 85.10 (22)—of the lateral lines of the two highways form a quadrilateral with the north and south sides parallel and seventy feet long at the south and one hundred eighty feet at the north. The other two sides are diverging curves seventy feet apart at the south and one hundred eighty feet at the north. Taking the center of the intersection as the point where medial lines of the quadrilateral intersect, the center of the intersection would be one hundred forty feet northwest of the west apex of the grass plot. To pass to the left of the center of the intersection as thus fixed as required by sec. 85.17 (2) the truck would have to travel one hundred twenty feet on the deceased's half of the county trunk road. These figures are as approximate as one may judge them by applying the scale to the map in evidence and judging as nearly as may be the extension of the curves of the lateral edges of the town road. A driver turning left from the town road could not even approximate the center of the intersection as declared by sec. 85.10 (22). An attempt of a driver to conform to sec. 85.17 (2) in turning left would create a situation of imminent danger from which it would be all but impossible for the drivers to escape. The collision occurred about seventy feet from the west point of the apex of the grass plot and about eighty feet east of the center of the intersection as fixed by sec. 85.10 (22).

The court instructed the jury in the language of sec. 85.17 (2), Stats., as to passing to the left of the center of the intersection. We do not perceive that this was prejudicial to the defendants. The instruction was in the defendants' favor as following it would permit the truck driver to invade the south half of the county trunk road for a much greater distance than he had right to do in the exercise of ordinary care. His duty manifestly was under the circumstances to keep to his half of the town road until he reached the south line of the traveled part of the county trunk road and then either stop or pass as directly onto the north half of the county trunk as he reasonably might. We suggest that it is important that sec. 85.10 (22) and sec. 85.17 (2) should by amendment be so harmonized as to minimize as much as possible the hazards incident to left turns at intersections.

While the opinion makes the erroneous statement in connection with fixing the point at which the truck entered the intersection, it leaves unaffected the distance the truck driver could see at this point, which was the fact under consideration bearing upon the correctness of the judgment appealed.

Another mistake in the opinion of which complaint is made is the use of the word "south" when the word "west" was obviously meant, which escaped notice until the advance sheets of the Northwestern Reporter were issued when the mistake was promptly corrected both for the bound volume of the Reporter and the Wisconsin Reports. Counsel assert that the opinion's statements of distance are erroneous and lay this to use through a mistake in the printed case, but corrected in the brief, where the dimensions of a map to scale are erroneously stated. But all distances stated in the opinion that are based on our measurements were based on the map itself and are in accordance with that map. No other criticisms of the opinion made in appellant's brief seem to warrant mention. They are apparently based largely upon the er-

roneous assumption that the court should have stated all the evidence bearing on a given point instead of stating such as seemed to the court sufficient to warrant the findings of the jury on that point, and on the assumption that the jury were bound to accept the testimony of the truck driver wherever it was not disputed by any other witness. We considered that the jury might discredit the witness for reasons stated in the opinion which seem to us sound notwithstanding that counsel does not so consider them.

*By the Court.*—The motion for rehearing is denied, but because of misinterpretation in the opinion of sec. 85.10 (22), Stats., which we have herein corrected, no costs will be imposed.