PAULSON, Appellant, vs. HARDWARE MUTUAL CASUALTY COMPANY, Respondent.

*October 9—November 5, 1957.*

For the appellant there were briefs and oral argument by *Ingolf E. Rasmus* and *James B. Halferty,* both of Chippewa Falls.

For the respondent there was a brief by *Wilcox & Sullivan* of Eau Claire, attorneys, and *Samuel Goodsitt* of Ladysmith of counsel, and oral argument by *Arthur B. Sullivan.*

BROWN, J. The judgment must be reversed for error as a matter of law in the answer of the special verdict that Piper was not negligent in his manner of making a left turn across Paulson's traffic lane. Respondent submits that Piper made the turn in the customary way. A custom which violates an express command of a statute will not serve as a justification of the violator's conduct. That is the case here. The statute referred to is:

"85.17 RULES FOR TURNING. . . '. (2) *Turning left.* The operator of a vehicle intending to turn to the left at an intersection or into a private highway shall make such turn from the traffic lane immediately to the right of and next to the center of the highway, or from the center lane of a highway having an uneven number of lanes unless such center lane has been posted or marked for vehicles moving in the opposite direction. In making the turn, he shall pass immediately to the left of the center of the intersection, passing as closely as practicable to the left of the center of the intersection, and shall leave the intersection immediately to the right of the center of the intersecting highway. For purposes of this subsection a divided highway intersected by any other highway shall be considered one intersection."

The intersection is defined:

"85.10 (22) *Intersection.* The area embraced within the prolongation of the lateral curb lines or, if none, then within the lateral boundary lines of two or more highways which join one another at an angle, whether or not one such highway crosses the other."

Piper testified that he began making his left turn when he was about 40 feet to the east of the east edge of the town road, which edge is itself 50 feet east of the center of the intersection, as intersection is defined by the statute. His

southwesterly course along that edge into the town road would not bring him materially closer than 40 feet from the center of the intersection. The statutory direction that he shall pass "as closely as practicable" to the left of the center of the intersection gives some flexibility to the requirement, permitting the jury to take into account highway or traffic conditions which make a close approach to the mathematical center impracticable. But impracticability is not the equivalent of merely less convenient. Respondent argues that the area surrounding the center of the intersection and extending thence into the town road was obstructed by frozen snow, ice, and gravel to an extent that passage over it might be considered impracticable. Piper's testimony may be so interpreted. On the other hand, the record contains Exhibit 18, a photograph, herewith reproduced, of the scene taken by direction of the sheriff soon after the collision and before the two automobiles had been moved.

Exhibit 18.

This shows beyond contradiction by any oral testimony dependent on memory or veracity that there was no obstruction making a close approach to the statutory center impracticable. · The exhibit shows conclusively that traffic not only could but did go across the center of the intersection where the town road joins Highway 8. The physical situation differs thus from that in *Eberdt v. Muller* (1942), 240 Wis. 341, 2 N. W. (2d) 367, 3 N. W. (2d) 763, and *Weiberg v. Kellogg* (1925), 188 Wis. 97, 205 N. W. 896, when the town road entered the other in two separated branches. We must hold as a matter of law that Piper did not pass as closely as was practicable to the left of the center of the intersection nor did he leave the intersection immediately to the right of the center of the intersecting highway.

As sec. 85.17 (2), Stats., is a safety statute, its breach is negligence. Question 1 (b) of the special verdict inquiring if Piper was negligent in his manner of making a left turn should have been answered "Yes" by the court, either before submitting the verdict to the jury or upon motions after verdict.

Turning at the proper place would have given Piper longer time for lookout to the west, at his speed of eight miles per hour, and in all probability would have dissuaded him from turning at all until Paulson had passed even if Paulson, at 60 to 65 miles per hour, had not gone past Piper before the latter commenced his turn at the proper place regardless of lookout. Considering the place where the vehicles collided, well to the east of the center of the intersection, it is obvious that the illegal turn was an efficient cause of the collision. We conclude, therefore, that the erroneous answers affected the comparison of the causal negligence of the two drivers to Paulson's prejudice, thus requiring a new trial.

Paulson submits that the jury's finding that he was not negligent in lookout, taken in connection with the fact that

he did not see the turning signal which Piper testified he gave and the jury's determination that Piper was not negligent in signaling the turn, makes the verdict inconsistent and requires a new trial. Since we must direct a new trial for reasons already given we do not examine this contention.

Paulson, who was found not negligent in speed and in lookout and negligent only in management and control, insists that the distance separating the two automobiles when Piper turned across his path was so short that an emergency not due to any fault of his confronted him and negligence cannot be predicated against him because of the measures (management and control of his automobile) which he took to avoid the accident after the emergency arose. No doubt a finding by the jury that an emergency was thus presented would have to be sustained but we are not prepared to hold that the question was not one for the jury. The collision took place on the shoulder of Highway 8. The paved portion of the highway was clear. Paulson was unable to keep his car upon the clear highway because it could not be steered while he braked it so vigorously over a distance of at least 120 feet. His argument that the emergency doctrine absolves him of negligence and there is no jury issue of his management and control must be rejected, though a jury might well find that this was negligence which had less causal effect than that of the driver who turned left illegally and without adequate lookout.

Paulson suffered a disabling and painful injury and he submits that the verdict allowing $5,000 for it is inadequate to an extent that demonstrates the jury's passion and prejudice. The jury saw him and heard the testimony concerning the probable present and future disability. We would not order a new trial on this ground, but since there must be one for other reasons, and since the lapse of time, giving a longer period of convalescence, will permit a more-accurate

appraisal of the permanent disability, we include the question of damages among the issues to be retried.

*By the Court.*—Judgment reversed, and cause remanded with directions to order a new trial on all issues.