304 F.2d 230
 Martin DeJONG, Plaintiff-Appellee,
v.
Gary L. BUZZELL, Columbia County, a Body Corporate, and
Hardware Dealers Mutual Fire Insurance Company, a
Domestic Wisconsin Insurance
Corporation, Defendants-Appellants.
 No. 13632.
 United States Court of Appeals Seventh Circuit.
 June 12, 1962.
 
 W. L. Jackman, Madison, Wis., David H. Bennett, Portage, Wis., for appellant.
 Charles N. Goerdt, La Crosse, Wis., Earl T. Klay, Orange City, Iowa, for appellee.
 Before HASTINGS, Chief Judge, and SCHNACKENBERG and SWYGERT, Circuit judges.
 HASTINGS, Chief Judge.
 
 
 1
 This is an action for damages resulting from a collision between two trucks. The case was tried to a jury which found defendant, Gary L. Buzzell, and plaintiff, Martin DeJong, each causally negligent. It attributed 65% thereof to Buzzell and 35% to plaintiff. The district court entered judgment accordingly.
 
 
 2
 Defendants, Buzzell, Columbia County (Wisconsin) and Hardware Dealers Mutual Fire Insurance Company, appeal from this judgment. Columbia County was Buzzell's employer, and Hardware Dealers Mutual Fire Insurance Company was its insurance carrier. It is defendants' contention that there was no evidence of causal negligence on the part of Buzzell. In the alternative, they claim the negligence of plaintiff was, as a matter of law, equal to or greater than Buzzell's.
 
 
 3
 The accident occurred May 19, 1960 at about 8:00 A.M. on U.S. Highway 16 near its intersection with Poser Road in Columbia County, Wisconsin. Highway 16, a two lane road, runs generally east and west and Poser Road north and south.
 
 
 4
 Immediately prior to the accident Buzzell was driving a truck east on Highway 16 approaching Poser Road. Plaintiff's truck was directly behind Buzzell and traveling east. Following plaintiff was an unidentified truck traveling in the same direction as Buzzell and plaintiff.
 
 
 5
 The three trucks were observed in this alignment by Myron Dunning when he was east of Poser Road driving a truck west on Highway 16. Dunning was a witness at the trial and on direct examination testified as follows:
 
 
 6
 'Q All right. Now, Mr. Dunning, as you were proceeding west on Highway 16, and as you neared the intersection or junction of Poser Road, what, if anything, did you see?
 
 
 7
 'A Well, I see a County truck coming; I see DeJong's cattle truck coming; and an unknown semi following behind.
 
 
 8
 'Q All right. Now, when you first saw those trucks, where were those trucks in relation to the intersection of Poser Road and 16?
 
 
 9
 'A They were coming down the crest of the hill, going east.
 
 
 10
 'Q And where were you at that time?
 
 
 11
 'A I would say I was back-- oh, sixty or seventy rods (990-1155 feet) east, approximately.
 
 
 12
 'Q Did you keep these three trucks in your vision at all times?
 
 
 13
 'A Yes * * *.
 
 
 14
 'Q All right. What, if anything, did you see the County Highway truck do as it approached the intersection or junction of Poser Road?
 
 
 15
 'A As he was coming down to the junction, he kept a-getting over to the left-hand side of the road, getting over farther, which he--
 
 
 16
 'Q I will ask you to state whether or not he actually crossed over the center line?
 
 
 17
 'A Yes, he did.
 
 
 18
 'Q And how far over the center line would you say?
 
 
 19
 'A He was a good half way over the center line.
 
 
 20
 'Q So that his truck was a good halfway into the north lane of travel, is that correct-- or the left lane of travel?
 
 
 21
 'A That's right.
 
 
 22
 'Q And how far was the County Highway truck at this time from the junction of Poser Road and U.S. Highway 16?
 
 
 23
 'A Oh, he was back, probably twelve or fifteen rods (198-247.5 feet), maybe. * * *
 
 
 24
 'Q I will ask you to state whether or not you observed any light signals?
 
 
 25
 'A There was no lights whatsoever.
 
 
 26
 'Q And what, if anything, happened then?
 
 
 27
 'A Well, they were coming down the hill, the County truck was getting over on the left-hand side of the road, and this third, unbeknown semi put on a burst of speed, pulled out and came down. * * *
 
 
 28
 'Q Then what happened, Mr. Dunning?
 
 
 29
 'A Then he started coming down past the DeJong semi, and there was only one place for this County unit to go-- he went back to the right, or he would have got hit himself broadside.
 
 
 30
 'Q And what did the County truck do?
 
 
 31
 'A That's just what he did, he swerved back to the right side of the road.
 
 
 32
 'Q I will ask you to state what was the nature of his turn as he swung back to the right?
 
 
 33
 'A He swung back in a hurry to get out of the way because the other guy was coming down through there.
 
 
 34
 'Q At that time, as this other truck was passing, was the County Highway truck back into the right lane of travel completely?
 
 
 35
 'A Well, he had got over about-- one wheel was on the black line.
 
 
 36
 'Q And where was the passing truck at this time?
 
 
 37
 'A He had come down by the County truck after the County truck had got back far enough over, and he cut in short on account of me coming, to get over on his side of the road.
 
 
 38
 'Q And how far was the County truck from the junction or intersection at the time when it swerved back sharply to the right?
 
 
 39
 'A Probably within-- well, twelve rod (198 feet)
 
 
 40
 'Q What, if anything, happened then? What did the-- all right. Did you see the impact?
 
 
 41
 'A No, I didn't.
 
 
 42
 'Q And why didn't you?
 
 
 43
 'A Because the other truck-- the other semi had cut in front of him and the DeJong truck, so that I couldn't see. I didn't see them when they hit. * * *'
 
 
 44
 On cross-examination, Dunning stated that from the position of Buzzell's truck he concluded Buzzell intended to turn left into Poser Road and that the unknown truck went off a little on the left shoulder to get by the Buzzell truck, kicking up a cloud of dust as it went by. On redirect examination, he testified Buzzell turned southeast in order to return to the right lane and was in that position when the unknown truck passed.
 
 
 45
 The impact occurred after the unknown truck returned to the right lane of travel and before Buzzell reached the intersection. Buzzell's truck was struck in the right rear by plaintiff's truck.
 
 
 46
 Buzzell testified the unidentified truck moved to pass him at the rise in Highway 16, 1,000 feet west of the Poser Road intersection. According to Dunning, Buzzell could have been no more than 247.5 feet from the intersection when the unknown truck passed Buzzell. Buzzell stated he pulled on his left directional signal when the unknown truck was alongside him, but Dunning testified there were no lights whatsoever. Buzzell claims he never crossed the center line, while Dunning testified Buzzell was half way into the left lane and had to swerve sharply to the right to avoid being hit by the unknown truck when it moved to pass him. The jury could properly have believed Dunning, a disinterested witness, and discredited Buzzell on these disputed points.
 
 
 47
 Our examination of the entire record leads us to conclude that there was sufficient evidence to warrant the jury finding Buzzell to be causally negligent on at least two theories. The jury was warranted in believing that Buzzell failed to signal before leaving the right lane of travel in violation of a Wisconsin statute;[1] thus setting in motion the chain of events resulting in plaintiff's damages. Also, the jury could have believed that Buzzell, having moved half way out into the left lane of travel, swerved back sharply into the right lane in front of plaintiff without any warning, again in violation of a Wisconsin statute.[2] These two statutes have as their purpose the safety of users of highways and a breach of either of them is negligence. See Paulson v. Hardware Mut. Casualty Co., 2 Wis.2d 94, 85 N.W.2d 848 (1957).
 
 
 48
 The facts present here do not bring this case within the scope of Cole v. Phephles, 241 Wis. 155, 5 N.W.2d 755 (1942), where the Supreme Court of Wisconsin held there was no evidence that defendant, whose auto had been struck in the rear by plaintiff, was negligent. In Cole, unlike the present case, there was no evidence that defendant had been half way into the left lane and then swerved back into the right lane.
 
 
 49
 Under Wisconsin law, apportionment of negligence is peculiarly for the jury. Huse v. Consolidated Freightways, 7 Cir., 227 F.2d 425, 430 (1955). Only in rare cases should a court declare as a matter of law that plaintiff's negligence exceeds that of defendant, and each case must be considered on its own peculiar facts. Quady v. Sickl, 260 Wis. 348, 51 N.W.2d 3, 52 N.W.2d 134 (1952).
 
 
 50
 In Quady, the Wisconsin court held that a driver who failed to slow down when his vision was obscured, as a matter or law, was more negligent than the driver of a stalled truck parked on the roadway. From this, defendants argue here that: 'It seems incredible that one who in broad daylight runs into the rear of a loaded truck with his vision not obstructed and while the preceding truck is driven straight ahead is not more negligent than the preceding driver.' The instant case is not so simple. As stated earlier, there is evidence that Buzzell had driven half way into the left lane without signaling and that he cut back into the right lane in front of plaintiff.
 
 
 51
 The jury took account of plaintiff's negligence by finding him guilty of 35% of the total negligence. It was well within the province of the jury to make this determination. Upon consideration of the entire record, we cannot say that as a matter of law plaintiff's negligence was equal to or greater than Buzzell's.
 
 
 52
 We hold that there was substantial evidence that defendant's negligence was causal. The trial court did not err in refusing to change the jury's answer in the special verdict on this proposition. In the alternative, the trial court did not err in refusing to change the apportionment of negligence as fixed by the jury or in refusing a new trial.
 
 
 53
 The judgment of the district court is in all things affirmed.
 
 
 54
 Affirmed.
 
 
 
 [1]
 Wis.Stat. 346.34(1) (1959) provides in pertinent part: 'No person shall * * * turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. In the event any other traffic may be affected by such movement, no person shall so turn any vehicle without giving an appropriate signal * * *.'
 
 
 [2]
 Wis.Stat. 346.13(1) (1959) states: 'The operator of a vehicle shall drive as nearly as practicable entirely within a single lane and shall not deviate from the traffic lane in which he is driving without first ascertaining that such movement can be made with safety to other vehicles approaching from the rear.'