## A91A0889. PETERSON v. BAUMWELL et al.
### (414 SE2d 278)

Pope, Judge.

Appellee Roberta Steen and appellant Tommy Peterson decided to purchase a piece of residential real estate located at 468 Greenwood Avenue in Atlanta, Georgia. The parties intended to renovate the dwelling on the property and use it as rental property. Peterson, who had previously been involved in similar projects, was in charge of renovating the property. Steen agreed to live on the property and manage it. In order to cover mortgage payments and other expenses, the parties determined they would need four rental units plus the one occupied by Steen. The parties believed the property had been used as multi-family rental property in the past but realized they needed to get the proper zoning authorization from the City of Atlanta (the "City") prior to closing. Peterson suggested that they get Jed Baumwell, whom Peterson had been partners with on similar renovation projects, to obtain the necessary documentation from the City.

Shortly before closing Peterson obtained a letter from Baumwell entitled "Verification of Zoning Classification." This letter appeared to have been issued by a zoning review officer for the City and indicated that, based on prior non-conforming use, the property legally could be used as a five-unit building. Soon after closing on the property Steen learned that the letter was a forgery and that the property was legally zoned for use as a one or two family residential dwelling. Because the parties could not use the property as originally intended, renovations were never completed. The parties became delinquent in their mortgage payments, and the lender subsequently regained the property through foreclosure proceedings.

Steen and Peterson filed suit against Baumwell seeking damages and other relief based on their reliance on the fraudulent zoning letter in purchasing the property. At that time both Steen and Peterson were jointly represented by Louis Polonsky, Esq. Baumwell answered, asserting, inter alia, that the action against him was barred by the Clean Hands Doctrine. Based on this and other information, Steen became suspicious that Peterson had knowledge of the fraudulent nature of the letter from the beginning and notified Polonsky that she no longer wished for him to represent her. Polonsky filed a motion to withdraw as counsel for both parties, which was granted by the trial court. Steen obtained new counsel and amended her complaint to include a cross-claim against Peterson based on her contention that he and Baumwell had acted in concert in procuring the fraudulent zoning letter, as well as a claim against both Peterson and Baumwell under the Georgia RICO Act based on their alleged procurement of fraudulent zoning letters on other properties. Peterson answered and also filed a cross-claim against Steen, contending, inter alia, that she

breached the parties' agreement to renovate the property.

The parties proceeded to conduct discovery in the case. At the beginning of Polonsky's deposition, Peterson's attorney invoked the attorney-client privilege on his client's behalf and Polonsky, relying on the privilege, refused to answer numerous questions posed by Steen and Baumwell. The questions Polonsky refused to answer were certified and Steen subsequently filed a motion to compel answers to these certified questions. The trial court granted Steen's motion and ordered Polonsky to respond to the certified deposition questions concerning his communications with Steen and Peterson. We granted Peterson's application for interlocutory appeal and Peterson timely filed his notice of appeal to this court on November 5, 1990. *Held*:

1. Peterson first challenges an earlier order of the trial court directing Peterson to answer questions about a document entitled "Baumwell's Trail of Zoning Verification Letters," which Peterson prepared during the time that Polonsky represented both he and Steen, on the basis that such document was not protected by the attorney-client privilege. Although Peterson did not seek to appeal that order at the time it was entered, he argues that upon the grant of his application for interlocutory review such order also became subject to review by this court pursuant to OCGA § 5-6-34 (d). That Code section, however, also provides that the appellate courts of this state are not required to pass on moot questions. The record here shows that Peterson complied with the trial court's order compelling him to respond to questions concerning the Trail of Zoning document, thereby rendering the issue of the applicability of the attorney-client privilege to testimony concerning that document moot. See *In the Interest of J. B.*, 199 Ga. App. 593 (405 SE2d 574) (1991). We thus decline to address the merits of this enumeration.

2. Peterson next contends that the trial court erred in ordering Polonsky to give deposition testimony about matters which Peterson contends are protected from disclosure by the attorney-client privilege. " 'Our Code recognizes certain privileges, including the attorney-client privilege, and prohibits the evidentiary use of communications protected by the privilege. See OCGA §§ 24-9-21; 24-9-24 and 24-9-25.' [Cit.] 'Parties may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action.' (Emphasis supplied.) [Cits.]" *Southern Guaranty Ins. Co. v. Ash*, 192 Ga. App. 24, 25 (383 SE2d 579) (1989). However, as Peterson concedes, a well-recognized exception to the exclusion of evidence based on attorney-client privilege exists in those situations in which the attorney jointly represented two or more clients whose interests subsequently become adverse, such as in the case at bar. Thus, "[i]f two or more persons jointly consult [or retain] an attorney the communications which either makes to the attorney are not privi-

leged in the event of any subsequent litigation between the parties. In such situations it is considered that the attorney does not have an attorney-client relationship with either of the joint parties." *Gearhart v. Etheridge*, 232 Ga. 638, 640-641 (208 SE2d 460) (1974), citing Green, Georgia Law of Evidence, § 185 (1957). See also *Atwood v. Sipple*, 182 Ga. App. 831 (3) (357 SE2d 273), cert. denied, 484 U. S. 944 (108 SC 330, 98 LE2d 357) 1987).

Applying this exception to the case at hand, it is clear, as Peterson concedes, that the communications he and Steen made to Polonsky during the time they were jointly represented are admissible, and hence discoverable, in this subsequent litigation between them as to matters pertaining to the joint representation. Peterson argues, however, that the trial court erred in applying the "joint-attorney" exception in this case because the effect is to allow Baumwell, a third party, access to the otherwise privileged communications. As is discussed more fully below, we find this argument to be unpersuasive under the facts of this case.

First, it is axiomatic that the privilege belongs to the client, not the attorney, see *Gilbert v. State*, 169 Ga. App. 383 (1) (313 SE2d 107) (1984), and the burden is on the client, here Peterson, to prove that his communications to counsel were privileged and thus not subject to discovery. *Southern Guaranty*, supra at 29. "Where evidence is objected to, the burden is upon the objecting party to show where the evidence is inadmissible. [Cit.]" *Parker v. Wellons*, 43 Ga. App. 721, 724 (160 SE 109) (1931). The record shows that although Peterson asserted the privilege at the beginning of Polonsky's deposition, he failed to file a response to Steen's motion to compel Polonsky's answers to the certified deposition questions and failed to present any argument when the motion was orally argued to the trial court, except to indicate to the court that he did not waive the privilege. Indeed, his attorney made the statement during oral argument that he was there "just [as] amicus." In our opinion, and especially in light of the fact that it is the burden of the client, and not the attorney, to prove the applicability of the privilege, Peterson's failure to offer any opposition to Steen's motion in the court below constitutes an "acquiescence by silence" to the trial court's subsequent ruling and, consequently, a waiver of his right to appeal that ruling to this court. See *Horan v. Pirkle*, 197 Ga. App. 151, 152 (1) (397 SE2d 734) (1990). " ' "One cannot complain of a judgment, order, or ruling that his own procedure or conduct aided in causing." ' [Cit.]" Id.[1]

Moreover, we do not believe that the presence of Baumwell as a

---

[1] See also Rule 6.2 of the Georgia Uniform Superior Court Rules which provides that, unless otherwise ordered by the trial judge, each party opposing a motion *shall* file a response not later than 30 days after service of said motion. (Emphasis supplied.)

party to this litigation mandates that an "exception" to the joint-attorney exception should be made in this case. The gist of Steen's complaint against Peterson was that he and Baumwell acted in concert to perpetuate a fraud against her. If the allegedly privileged communications to Polonsky show· this to be the case, then this information is presumably already known to Baumwell, a party to the alleged "conspiracy." If the evidence fails to support or is irrelevant to Steen's claims against Peterson, then that evidence would also tend to be irrelevant to Peterson's and Baumwell's claims against each other, or, if relevant, would tend to support Peterson's denials about his involvement in the procurement of the fraudulent zoning letters. Thus, under the circumstances here, we fail to see how the disclosure of the evidence to Baumwell will result in irreparable harm to Peterson, as he contends on appeal.

Moreover, other courts have applied the joint-attorney exception in situations in which the information revealed would be unfavorable to the former client vis-a-vis his position to another party in the litigation who is a stranger to the former attorney-client relationship. In *Hoffman v. Labutzke*, 289 NW 652 (Wis. 1940), a wrongful death case, the insured and the insurer had been jointly represented both before and throughout the trial. Following trial, the insured informed the attorney that he had lied at trial about the circumstances surrounding the accident giving rise to the wrongful death action. The insurer sought a new trial on the basis, inter alia, that the insured's statement showed a breach of a condition of coverage under the policy, and asserted that the statement should not be protected by attorney-client privilege. Id. at 655. Although not discussed by the appellate court, it is obvious that in addition to providing the insurer with a possible coverage defense, the attorney's testimony concerning the insured's after trial statement also would have shown that the insured, who had also filed a motion for new trial, fabricated his defense against the wrongful death action. Nevertheless, the Supreme Court of Wisconsin, applying the joint-attorney exception to the attorney-client privilege, deemed the privilege had been waived and allowed the attorney to testify about the insured's statement. In reaching this result the court reasoned that "when one party consents [to joint representation], his privilege under the statute 'is waived.' . . . Each [party] waived the privilege of the statute as to reporting his communications to the other whenever those communications affected the interest of the other, . . . and if each so waived it for like reason each waived it as to testifying in court as to such communications." Id. at 657.

We think the court's analysis in *Hoffman* is instructive as to the resolution of the issues presented in the case at bar. If, by consenting to joint representation, Steen and Peterson waived the attorney-client

privilege as to communications affecting the interests of the other, then such communications should be discoverable by each one of them against the other. The fact that there is present in this litigation a third party who will gain access to these communications does not change the fact of the initial waiver. For these reasons, the trial court did not err in ordering Polonsky to answer the certified deposition questions.

*Judgment affirmed. Birdsong, P. J., and Cooper, J., concur.*

DECIDED NOVEMBER 27, 1991 —
RECONSIDERATION DENIED DECEMBER 19, 1991 — 

*Edward J. Bauer,* for appellant.

*Theodore L. Marcus, Starkey, Land & Crowley, Carl A. Crowley III, Gambrell, Clarke, Anderson & Stolz, James L. Paul, Rubin, Winter & Rapoport, S. Richard Rubin,* for appellees.