HUNT, Appellant, vs. DOLLAR, Defendant: OHIO CASUALTY INSURANCE COMPANY, Respondent.

*January 15—February 9, 1937.*

For the appellant there were briefs by *Allan V. Classon,* attorney, and *G. F. Clifford* of counsel, both of Green Bay, and oral argument by *Mr. Classon.*

For the respondent there was a brief by *Chadek, Cornelisen & Denissen* of Green Bay, and oral argument by *F. P. Cornelisen.*

FOWLER, J. The plaintiff sued the defendant driver of an automobile on a highway and his insurer to recover for injuries sustained when his wagon, through negligence of the insured, was struck from behind by the automobile.

After first joining with the insured in an answer merely denying the insured's negligence and denying liability on that ground, the insurer obtained leave of court, upon notice and supporting affidavits, to file a "supplemental answer" in which it denies liability under the policy on the grounds that the insured violated his contract of insurance, (a) by making a false and untrue statement as to material facts concerning the accident involved; (b) by inducing certain witnesses to give false and untrue written statements as to material facts concerning the accident; and (c) by himself falsely testifying on adverse examination as to material facts concerning the accident. Coupled with each of (a), (b), and (c) is the statement that the insurer relied on the several statements in deciding it had an honest and adequate defense. The insurer by its supplemental answer demanded that the court adjudge the contract of insurance void, that the plaintiff take nothing as against the insurer, and that the complaint be dismissed as to the insurer.

A separate trial to a jury was had upon the issue raised by the supplemental answer. Three questions were submitted

to the jury inquiring, (1) whether the insured "concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof;" (2) whether the insured induced named persons to make false written statements as to material facts and circumstances concerning any such matter; and (3) whether the insured testified falsely on adverse examination to any material fact or circumstance concerning any such matter. To each of these questions the jury answered "No."

The questions submitted to the jury were framed to enable them to determine whether the insured violated Paragraph P of the insured's policy, which reads as follows:

"This entire policy shall be void if the assured has concealed or misrepresented any material fact or circumstance covering this insurance or the subject thereof; or in case of any fraud, attempted fraud, or false swearing by the assured touching any matters relating to this insurance or the subject thereof, whether before or after a loss or accident."

It is undisputed that the trial judge was right in holding that the insured made a false written statement, procured false written statements to be made by others, and falsified in his adverse examination as inquired by questions (1), (2), and (3) of the verdict. The appellant's contention is that, because the falsehoods did not go to occurrences at the time of the accident, but went only to the assured's drinking and to where he was prior to the accident on the night of its occurrence, they were not as to any "material fact or circumstance concerning this insurance or the subject thereof," and therefore did not void the insurance contract.

The written statement made by the assured stated that the assured, a Mr. Edwards, and a Miss Nelson, started about 9:30 p. m. and took a drive "around a short while" and "then went to a dance at Riverview," a dance hall with a tavern in connection, arriving about 10 p. m.; that they left Riverview about 11, and drove to the home of the sister of the assured

in De Pere; that they played cards there until about 3 a. m.; and that "we had had absolutely nothing containing alcohol to drink all evening."

The assured procured Edwards to make a written statement confirming in every particular his own written statement as to the matters above mentioned, and procured his sister living at De Pere to make a written statement that on the night of the accident the assured, Edwards, and Nelson called at her home about midnight; that she and her husband and the visitors played cards until the visitors left; that no liquor was served during the stay; and that none of the three showed any signs of intoxication.

It is undisputed that the assured was not at the home of his sister in De Pere at all during the night of the accident. That preceding the accident the assured with Edwards, two other men, Miss Nelson, and two other girls went in the assured's Ford automobile to at least six different roadhouses or taverns where intoxicating liquor was served to members of the party. The next last such place visited by the whole party is referred to as "Steckart's;" the last as "Hall's." The assured admits that during the visits to these places he drank ten or twelve glasses of beer and four drinks of whiskey out of a bottle. A witness with him gave testimony that would support the inference that the assured drank whiskey at the bar at one of the places visited. From Hall's, four of the party were driven to their homes. The assured drove up to the time the party reached Hall's. Members of the party objected to his driving when they left Hall's because of the manner in which he drove the car. In driving from Steckart's to Hall's he "drove sixty to sixty-five miles per hour;" he "went around, whizzed to scare them;" he "drove from side to side;" the members of the party "complained about the manner in which he was driving." Edwards drove from Hall's until the four were taken home. The assured then resumed

driving. He, Edwards, and Miss Nelson went to another tavern. The assured admits all three "had a drink" there. Edwards there became greatly intoxicated. The accident occurred after they left the tavern.

The above clearly shows that the misrepresentations and concealments made in the written statements relating to the assured's drinking were as to a "material fact or circumstance concerning this insurance or the subject thereof," and that the false swearing of the assured's on his adverse examination was "touching" "a matter relating to this insurance or the subject thereof" within the meaning of Paragraph P of the policy. The insurance was to indemnify the assured against liability for injuries resulting from assured's negligence in driving his automobile. The drinking concealed was to such extent as to support the inference that it bore directly upon the matter of the assured's negligence at the time of the accident, and was thus "material" to the "subject of" the insurance. The drinking concealed was to such extent as also to affect the credibility of the assured as a witness to the immediate circumstances of the accident, and indirectly bore upon the question of the assured's negligence.

The appellant contends that the evidence does not show that the false statements and false swearing in any way jeopardized the insurer and therefore did not void the policy. As to jeopardizing the insurer, the concealment was of such nature as to tend to lead the insurer to conclude that it was justified in defending the case on the merits, whereas, if the facts as to the defendant's drinking and carousing had been disclosed, it might well have concluded to adjust the damages rather than stand the expense of a trial and the chance of an enhanced award because of the assured's conduct previous to the accident. The previous conduct was such as to be likely to prejudice a jury against the assured, and this would have important bearing upon the matter of going to trial.

A statement in *Buckner v. General Casualty Co.* 207 Wis. 303, 241 N. W. 342, is cited in support of the contention here under consideration. It is there said, page 310:

"This is not to say that any slight error in the statement of facts or failure to disclose some collateral fact will necessarily be held to amount to a breach of the contract, but the withholding of information, the making of untruthful statements, and the concealing of necessarily relevant and material facts can have but one purpose and that is to help the claimant rather than the insurer."

The misrepresentations here involved are no "slight error in the statement of facts." They may constitute a failure to disclose facts that are collateral in one sense to those immediately connected with the accident, but the facts concealed and misrepresented, if collateral in this sense, cannot be considered as immaterial and nonconsequential, and the misrepresentation cannot be disregarded or condoned.

But whether or not the concealments and misrepresentations of the assured voided the policy under Paragraph P, they voided it because they violated express conditions of the policy. In cases of breach of condition it is immaterial whether the breach in fact prejudices the insurer. In *Coleman v. New Amsterdam Casualty Co.* 247 N. Y. 271, 276, 160 N. E. 367, 369, it is said:

"The plaintiff makes the point that the default should be condoned, since there is no evidence that co-operation, however willing, would have defeated the claim for damages or diminished its extent. For all that appears the insurer would be no better off if the assured had kept its covenant, and made disclosure full and free. The argument misconceives the effect of a refusal. Co-operation with the insurer is one of the conditions of the policy. When the condition was broken, the policy was at an end, if the insurer so elected. The case is not one of the breach of a mere covenant, where the consequences may vary with fluctuations of the damage. There has been a failure to fulfil a condition upon which obligation is dependent."

- Paragraph H of the policy provides:

"It shall be a condition precedent to the company's liability under this policy that upon the occurrence of any . . . accident . . . immediate written notice thereof with the fullest information obtainable at the time, . . . shall be given by or on behalf of the assured to the company or any of its duly authorized agents."

The written statement signed by the assured did not contain "the fullest information" within the assured's knowledge, and constituted a breach of this condition.

Paragraph O of the policy provided that:

"It shall be a condition precedent to the company's liability under this policy that the assured . . . aid in . . . securing information and evidence . . . all to the extent and in such manner as is deemed desirable for the company; and shall at all times render all possible co-operation and assistance."

The procuring of the false statements by Edwards and the assured's sister was securing misinformation rather than information, and a breach of condition "O." Concealing the drinking and doings preceding the accident, was withholding "co-operation and assistance" and was also a breach of condition "O." As said in *Buckner v. General Casualty Co.,* *supra,* p. 309:

. "Co-operation does mean that there shall be a fair, frank, and truthful disclosure of information reasonably demanded by the insurer for the purpose of enabling it to determine whether or not there is a genuine defense."

The appellant contends that the policy should not be voided as against the plaintiff because of the misconduct of the assured. This point is perhaps sufficiently covered in *Bergstein v. Popkin,* 202 Wis. 625, 233 N. W. 572, where it is said, p. 632:

". . . It has never been held that a third party for whose benefit a contract was made, had any greater or more extensive right than existed by the terms of the contract, and it has

been almost universally held that if the original parties to the contract reserve by the terms of the contract the right to modify it or *abrogate* it, such a reservation is valid and enforceable."

It was also said in *Watkins v. Watkins,* 210 Wis. 606, 612, 245 N. W. 695:

"It has been repeatedly held by this court, however, that when a right has been created by contract, the third party claiming the benefit of the contract takes the right subject to all the terms and conditions of the contract creating the right."

Appellant contends that sec. 85.93, Stats., makes an insurer of an owner of an automobile liable to a person injured by his operation of it regardless of the liability of the insured under the policy, and cites *Oertel v. Fidelity & Casualty Co.* 214 Wis. 68, 251 N. W. 465, in support of the contention. We can perceive no such effect either of the statute or of the decision cited. The decision is merely to the point that the statute authorizes suit against the insurer, although the insured be not joined as a defendant. There is nothing in it to negative the idea that the insurer is not liable unless the assured is, or that any defense under the policy that relieves the insurer from liability as against the assured also relieves it from liability as against injured persons. As to the statute, it does not create liability against the insurer. Liability against the insurer, if any exists, is created by the insurance contract, not by the statute. *Stransky v. Kousek,* 199 Wis. 59, 225 N. W. 401; *Bachhuber v. Boosalis,* 200 Wis. 574, 229 N. W. 117; *Bernard v. Wisconsin Automobile Ins. Co.* 210 Wis. 133, 245 N. W. 200.

*By the Court.*—The judgment of the circuit court is affirmed.