Marjie V. QUISENBERRY, Appellant,

v.

Mary A. KARTSONIS, Respondent, Mid-Continent Casualty Company, a Corporation, Garnishee.

No. 45162.

Supreme Court of Missouri.

Division No. 1.

Dec. 10, 1956.

Opinion Modified on Court's Own Motion and Rehearing Denied Jan. 14, 1957.

**452**

Lillie Knight, William W. Cochrane, Jr., Kansas City, for appellant.

John L. Sheridan, Donald E. Raymond, Kansas City, for respondent, Pew, Taylor, Welch & Sheridan, Kansas City, of counsel.

COIL, Commissioner.

This is a garnishment proceeding wherein plaintiff sought to recover $10,000 from garnishee, the amount of a judgment theretofore rendered in favor of plaintiff and against defendant in the damage suit. Verdict and judgment were for garnishee and plaintiff has appealed.

Automobile Dealers Mutual Insurance Company issued to defendant, Mary A. Kartsonis, its insurance policy covering her automobile by which insurer agreed, inter alia, to pay on behalf of insured all sums (up to $15,000 for one person in each accident) which insured became legally obligated to pay because of bodily injury sustained by any person caused by accident and arising out of the ownership, maintenance, or use of insured's automobile; to defend any suit against insured alleging such injury with the right reserved to investigate and settle; that "insured" included any person while using the covered automobile; all the foregoing subject, however, to the condition that insured would cooperate with the company in the preparation of and defense of any suit. Garnishee assumed the liabilities of insurer under that policy. On July 17, 1950, while the policy was in force, defendant's automobile collided with an automobile operated by plaintiff. On August 15, 1950, plaintiff filed suit against defendant for $10,000 damages alleging that personal injuries proximately resulted from defendant's negligence. On August 28, 1950, lawyers were employed by insurer to represent and defend the named defendant. They continued as defense attorneys until November 19, 1951, when they withdrew for the stated reason (conveyed in writing to insured) that "We feel

that the misrepresentations made in this case have constituted a fraud on your Company, and have so prejudiced their rights that they could not possibly and properly defend these suits, and there appears nothing for us to do but withdraw." On December 1, 1952, plaintiff (defendant not appearing) was awarded judgment against defendant in the sum of $10,000. The only testimony on the subject at that trial tended to show that defendant was the driver of her automobile at accident time. Plaintiff instituted this proceeding on May 8, 1953.

Plaintiff contends that the trial court erred in refusing to sustain her motion for a plaintiff's verdict at the close of all the evidence. We state the evidence from a standpoint favorable to garnishee.

The collision occurred in Kansas City on July 17, 1950, near the intersection of 31st Street and the Paseo. Defendant's automobile ran into the rear of plaintiff's car as it was stopped awaiting a change of an electric traffic signal. The only visible damage to plaintiff's automobile was a small dent in the right rear and plaintiff appeared not to have been injured and so stated at the time. Defendant's brother, Paul Kartsonis, was driving and defendant was a front-seat passenger in her automobile. At the accident scene it was agreed among plaintiff, defendant, and defendant's brother that all would say that defendant was driving, although each knew that defendant's brother had been driving. That, for the reason that defendant was of the opinion that her insurance did not cover if her brother was driving.

On July 26, 1950, insurer's investigator took signed statements from defendant and her brother in which each stated that defendant was driving at collision time. As noted, plaintiff filed suit against defendant on August 5, 1950, in which she averred that defendant was driving. On August 21, 1950, defendant's attorneys filed an answer in which it was admitted by defendant that she was driving her automobile at the time in question. On December 4, 1950, plain-

tiff filed an amended petition in which she again averred that defendant was the driver of the automobile at accident time. On September 1 and 10, 1951, respectively, plaintiff took the depositions of defendant and her brother. Each testified that defendant was the driver and described in detail their respective actions as driver and passenger preceding and at the time of the collision. On November 14 and 15, 1951, respectively, defendant and her brother gave written statements to defendant's and insurer's attorneys. Each admitted in those statements that defendant's brother was the driver at accident time and that their prior statements and sworn testimony to the contrary were false and were given for the purpose of causing the insurance company to pay the damages resulting from the collision. At the instant trial defendant and her brother each testified for the garnishee that defendant's brother was driving the automobile and that their prior statements and testimony to the contrary were false. As noted, insurer's attorneys withdrew from the defense of the action and denied insurer's liability under the policy on November 19, 1951.

The condition in a policy of liability insurance requiring insured to cooperate is valid and enforceable. The insured must perform the conditions of the contract upon which insurer's liability depends and, absent fraud, bad faith, or collusion by insurer, the insured's unexcused failure to cooperate in a substantially material respect releases insurer from liability under the policy as to the particular casualty in question. To establish a breach of a cooperation condition of an insurance contract requires a showing of insured's unexcused lack of cooperation in a substantially material respect. Generally, wilfully misinforming the insurer as to facts essential to the preparation of a defense or insured's collusion with a plaintiff to misrepresent material facts constitute breaches of cooperation conditions of insurance contracts. Finkle v. Western Automobile Ins Co., 224 Mo.App. 285, 294, 295, 26 S.W.2d

843, 846, 847; Fischer v. Western & Southern Indemnity Co., Mo.App., 106 S.W.2d 490, 491 [1, 2].

Plaintiff's argument in support of her present position runs thus: that it was conceded, at least for the purposes of the instant trial, that defendant's insurance policy covered the liability of any person (including defendant's brother) who was driving her automobile; that it was proved by garnishee that defendant was a front-seat passenger in her automobile being driven by her brother and thus, says plaintiff, defendant was liable for plaintiff's injuries whether she or her brother was driving at the time; that garnishee's evidence showed that there was no real question as to insured's liability for the injuries to plaintiff; that, in view of the fact that insurer was apprised of the truth more than a year prior to plaintiff's judgment, it was wholly immaterial to any defense insurer might make whether defendant or her brother was driving and likewise immaterial whether plaintiff and defendant and her brother colluded to misrepresent the fact of who was driving or that plaintiff's petition alleged and her judgment was based upon the false fact that defendant was driving. Plaintiff contends, therefore, that garnishee failed to prove any breach of the cooperation clause in the instant case or that, if there was a technical breach, no prejudice to the insurer was shown as a result and that the fact that insurer was prejudiced must be affirmatively shown before an insurer may escape liability under its policy.

■ There appear to be varying views as to the propositions last stated. See 6 Blashfield, Cyc. of Auto. Law and Practice, part 2, § 4059, pp. 78, 79; Appleman, Ins. Law and Practice, Vol. 8, § 4773, pp. 156–158, and § 4782, pp. 173–176; Annotations in 72 A.L.R. 1446, 98 A.L.R. 1465, 139 A.L.R. 770, 34 A.L.R.2d 264; Home Indemnity Co. of New York v. Standard Acc. Ins. Co., 9 Cir., 167 F.2d 919. In our view of instant case, however, we need not pause to consider what the applicable rule (as to the necessity to show prejudice either to prove a breach or to establish nonliability as a result of a breach) should be or to analyze and compare the many cases cited by the parties here. That is because it is our judgment, that upon a finding by the jury in this case either that insured and her brother wilfully and falsely stated, and 16 months thereafter falsely testified, that defendant was driving the automobile, or that, in addition to the foregoing, defendant, her brother, and plaintiff colluded to wilfully and falsely represent the fact of who was driving insured's automobile in any claim made against defendant's insurer, it follows as a matter of law that such conduct constituted an unexcused lack of cooperation by insured in a substantially material respect. And that, if prejudice to insurer need be shown, either to establish the breach or as a prerequisite to the insurer's nonliability, such prejudice appears in the instant case as a matter of law.

We observe that, in our view, a showing of prejudice, if that be necessary, cannot mean that insurer must show that it sustained a pecuniary loss or that the jury's verdict would have been different if the true facts had been disclosed. It is prejudice to insurer in the preparation and defense of the case which is in question. Ordinarily (in the absence of liability on false facts and no liability on the true facts and a showing that the judgment was obtained on false facts) whether *actual* prejudice resulted would be conjectural.

Be that as it may, however, it would appear that it needs no argument to sustain the proposition that insurer's counsel would have been substantially prejudiced in a material respect when at the trial of plaintiff's damage suit the credibility of each of its two witnesses, insured and her brother, was impeached by their prior sworn testimony contrary to their trial testimony. See, Valladao v. Fireman's Fund Indemnity Co., 13 Cal.2d 322, 89 P.2d 643; Allegretto v. Ore-

gon Automobile Ins. Co., 140 Or. 538, 13 P.2d 647. Plaintiff's contention that the defendant and her brother could not have been so impeached in the damage trial because their prior testimony related to an immaterial matter is without merit. Certainly the identity of the drivers is a material circumstance in an action to recover damages for personal injuries sustained as a result of the collision of two automobiles. Furthermore, as noted, defendant's and her brother's prior sworn testimony not only falsely identified the driver but in that connection detailed the actions and reactions of each prior to and at accident time in their falsely stated positions of driver and passenger, respectively.

Plaintiff relies upon dicta in Cowell v. Employers' Indemnity Corp., 326 Mo. 1103, 34 S.W.2d 705, 708. In that case insurance company, garnishee, pleaded, in effect, that insured had breached the cooperation clause in that he falsely informed insurer that his automobile was not being driven by him or by anyone on his behalf at accident time but had been stolen and was being operated by some unknown person; and that just prior to trial insured informed insurer that he was the operator of the automobile. Those averments were denied. Garnishee adduced no evidence. On appeal from a judgment entered on a directed verdict for plaintiff, garnishee made three contentions (none of which involved the cooperation clause), indeed, the court specifically noted that the defense of breach of contract had been abandoned on appeal, 34 S.W.2d 710 [IV]. In ruling the contention that plaintiff "failed to make a prima facie case because his evidence did not show 'a risk and cause of loss insured against,'" the court held that the essential elements of plaintiff's case had been admitted by garnishee's pleadings. As we understand that opinion, the court said that "another reason why it was unnecessary for plaintiff to make proof of such facts" was because garnishee had assumed charge of the defense, had failed to offer evidence of any sufficient reason for withdrawal therefrom, and, therefore, had waived the necessity for proof of such facts.

At 34 S.W.2d 709 [4], the court said that even if garnishee had proved the false statements by insured and the correction thereof immediately prior to trial, "we think they would not constitute justification for appellant's withdrawal from the defense," in the absence of pleading and proof that such "misrepresentation disabled or prejudiced appellant in making a defense or if the correct information when given had shown a state of facts under which the insurer would not have been liable." Aside from the distinguishing fact that the misrepresentations in Cowell apparently were statements made only to the insurer's representative while in the instant case the misrepresentations were also in the form of false sworn testimony, the foregoing dicta in Cowell may be contrary to the rationale of instant opinion. Be that as it may, we are not persuaded by the expressions in Cowell to a different conclusion than that which we have reached on instant facts, and, of course, our decision herein is limited to the particular facts of the present case.

■ Plaintiff also contends that garnishee pleaded, and defended upon, the single theory that it was not liable because defendant's brother was not covered by the insurance policy. It is true that garnishee's reply to plaintiff's amended denial of garnishee's answers to plaintiff's interrogatories affirmatively pleaded that defendant warranted, in consideration of a reduced insurance premium, that no operator of her automobile under the age of 25 resided in her household "and agreed that said policy * * * did not apply to such use," and that defendant's brother, driving at accident time, was under the age of 25, and therefore the policy did not cover any liability arising from the accident. Garnishee abandoned that allegation at instant trial and the jury was orally instructed (by agreement of the parties) that there was no contention by

garnishee that the policy did not cover plaintiff's judgment because someone under 25 years may have been driving it and that "garnishee's contention is that Miss Kartsonis lost any coverage under the policy that she might have had by allegedly conspiring with plaintiff against the insurance company, and by failing to cooperate with the insurance company within the requirements of the insurance policy." It is clear that, irrespective of the averments of any pleading, garnishee did not defend on the theory of noncoverage of defendant's brother.

Plaintiff's contention that the trial court erred in permitting garnishee, over plaintiff's objection, to amend its reply at the close of the evidence by including therein an averment that garnishee was prejudiced in making a defense of plaintiff's action by reason of the prior acts and statements of plaintiff, defendant, and defendant's brother, is without merit. That averment was in the nature of a conclusion which we have held, under the facts found by the jury in the instant case, followed as a matter of law.

■ Plaintiff makes two other contentions under her point that the trial court erred in refusing to direct a verdict. They are that the evidence showed that insurer was not in good faith in withdrawing from the defense of plaintiff's lawsuit and that, in any event, insurer waived insured's breach, if any, of the cooperation clause.

When plaintiff took defendant's brother's deposition on September 10, 1951, her counsel questioned him as to whether he was *sure* his sister was driving and, in that connection, asked whether the witness realized that he was under oath. Witness replied that he was sure his sister was driving. In a colloquy between counsel, defendant's lawyer branded that type of inquiry as "ridiculous" and as an attempt to "buffalo" the witness. Garnishee's counsel at the instant trial (the same lawyer who had appeared at the deposition) admitted that it was following that deposition he first became suspicious that there was some question as to the identity of the driver. Despite that suspicion counsel continued to represent defendant and more than a month later sent a private detective to discover from plaintiff any facts about the case including her claim that she had been injured. Not until approximately November 17, 1951, did insurer inform insured that it was withdrawing. Furthermore, the question and answer statement taken from defendant on November 15, 1951, wherein defendant admitted her prior false statements and testimony contained questions by insurer's counsel from which an inference could be drawn that the sole reason for insurer's withdrawal was the fact that insured's brother (the driver) was not covered by the insurance policy.

There may have been sufficient evidence upon which to submit to the jury the question of insurer's "good faith" or waiver in continuing the defense for a substantial period of time after it was on notice that there was a doubt as to the identity of the driver. And there may have been sufficient evidence upon which to submit the question of insurer's waiver resulting from a finding that insurer withdrew for a stated reason other than violation of the cooperation clause, and, therefore, waived lack of cooperation as a defense. We need not, however, determine the sufficiency of the evidence in those respects because all the evidence did not compel the conclusion of either bad faith or waiver and plaintiff failed to request instructions submitting either issue. Insurer's delay in withdrawal, even after a suspicion that it had been misinformed, was subject to the inference that the intervening time was spent in establishing the true fact. Likewise, insurer's stated reason for withdrawal, heretofore quoted, was broad enough to include violation of the cooperation clause.

■ The trial court did not err in overruling plaintiff's motion for a directed verdict.

■ Plaintiff contends that the trial court erred in giving defendant's instructions 6, 7, and 8. Instruction 6, after hypothesizing the actions, heretofore related, of plaintiff, defendant, and defendant's brother, directed the jury that if it found those facts then the three persons mentioned were "guilty of colluding and conspiring to present a false claim against defendant Mary A. Kartsonis and your verdict will be for garnishee and against plaintiff * * *." Plaintiff says that there was no false claim presented; that the instruction assumed that there was a false claim, when, at best, that was a jury question; and that the instruction failed to require the jury to find that garnishee was damaged.

As we see it, if plaintiff by virtue of an agreement with defendant and her brother knowingly and falsely alleged that defendant was the driver and proceeded to a judgment on proof of that wilfully false allegation, the asserted claim, in the sense noted, was false. And it was not improper to so characterize the claim in the instruction upon a finding by the jury of the hypothesized facts. True, there was no proof that the claim was false in the sense that because of the false allegation garnishee thereby was liable for a claim which it was not legally obligated to pay. In other words, there was no proof that insurer suffered pecuniary loss by reason of the collusion of the parties. Plaintiff considers instruction 6 as one submitting defensive fraud or conspiracy to defraud and correctly points out that a necessary element of a claim or defense based upon fraud is pecuniary loss and that the gist of a conspiracy action is damage resulting from an overt act pursuant to the conspiracy. Latta v. Robinson Erection Co., 363 Mo. 47, 59, 248 S.W.2d 569, 576; Rippe v. Sutter, Mo. Sup., 292 S.W.2d 86, 89 [3]. Thus, says plaintiff, so considering the instruction, the evidence did not sustain the defense submitted by it.

In Redler v. Travelers' Ins. Co., 342 Mo. 677, 685, 117 S.W.2d 241, 246 [4], there is dicta pointing out that active collusion to defraud an insurance company "is a good defense" separate and apart from a defense based upon violation of a cooperation clause. The court, in Redler, however, was referring to a fact situation in which there was collusion to recover on a false version of the facts when the defendant would not have been liable on the true version. It may be, therefore, that before "collusion to defraud," as referred to in Redler, "is a good defense," the judgment obtained against an insured defendant must have been false in the sense that the insurance company would have been, as a result of the collusion to defraud, forced to pay a judgment for which, on the true facts, it was not obligated to pay; i. e., a showing that pecuniary loss would have ensued in order to establish the necessary element of damage in a fraud or conspiracy to defraud defense. But the fact is that defendant's instruction 6, even though it probably was intended that it submitted a defense separate and apart from violation of the cooperation clause, did not necessarily so do. The instruction did not mention collusion to defraud or conspiracy to defraud but used the words "colluding and conspiring to present a false claim against defendant." As we have said heretofore the claim was a false one in the sense that it was based upon a false material fact and we have held heretofore that colluding and conspiring to present a false claim, under the facts of the instant case, would constitute a violation of the cooperation clause. Consequently, we are of the opinion that the instruction required fact findings from which the conclusion followed as a matter of law that garnishee was not liable because of insured's violation of the cooperation clause.

■ Instruction 7 explained that it was not necessary that the jury find the existence of a formal agreement in order to find that a conspiracy to present a false claim existed, and that if the plaintiff, defendant, and her brother did the acts hy-

pothesized in instruction 6 and such acts contributed to the assertion of a false claim against defendant and were done for that purpose, the jury could find that the conspiracy referred to existed. The same attack is made on instruction 7 as that made on instruction 6 and thus what we have said heretofore disposes of plaintiff's contention that instruction 7 was erroneous.

Instruction 8 hypothesized essentially the facts as to defendant's false statement and testimony. We have heretofore held that upon a finding of the facts hypothesized in the instruction, it followed as a matter of law that insured had violated the cooperation clause. Plaintiff's reason for contending that the instruction was erroneous is that it submitted a defense "diametrically opposite from" and thus inconsistent with the theory of defense presented by instruction 6. We have disposed of that contention by our holding heretofore that instruction 6 necessarily included the same theory of defense as instruction 8. The difference was that instruction 6 hypothesized a colluding and conspiring among plaintiff, defendant, and her brother, while instruction 8 submitted essentially the false statements and testimony of defendant and her brother without mention of the additional elements of collusion. Our conclusion is that garnishee was entitled to a verdict upon a finding of the facts hypothesized in either or both instructions 6 and 8 and consequently plaintiff was not prejudiced by the giving of either instruction.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.