Kurz, Plaintiff and Respondent, v. Collins and another, Defendants: Badger State Casualty Company, Defendant and Appellant.

*February 5—March 3, 1959.*

540

For the appellant there were briefs by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Arthur Wickham* of counsel, all of Milwaukee, and oral argument by *Mr. Wickham.*

For the respondent there was a brief by *Charlton, Yanisch, Binzak & Ritchay,* attorneys, and *Richard F. Yanisch* and *William A. Ritchay* of counsel, all of Milwaukee, and oral argument by *Richard F. Yanisch* and *William A. Ritchay.*

Currie, J. The issues on this appeal are as follows:

(1) Was there a failure of co-operation on the part of Collins and Pappas, or either of them, because of having made material false statements, which breached a condition of the policy of insurance as a matter of law. so as to entitle the insurance company to a summary judgment?

(2) Did Collins breach the co-operation clause of the policy by failing to verify the answer drafted for him by Badger's attorneys thus voiding the policy?

(3) Did the failure of Pappas to notify the insurance company of the commencement of the suit and to forward to Badger the summons served upon him constitute a material breach of a condition of the policy so as to render Badger not liable to the plaintiff on the policy?

(4) Did the filing of an SR-21 by Badger preclude it from raising as a defense the alleged breach of the conditions relied upon by it on its application for summary judgment?

*False Statements as Failure of Co-operation.*

The facts hereinafter stated are gathered from the affidavits considered by the trial court on the motion for summary judgment and from the verified answer of Pappas. No affidavits of either Collins or Pappas were filed, but parts of the adverse examinations of Collins and of the Badger's claim manager were incorporated into the affidavits which were filed.

The policy of insurance issued by Badger to Collins provided that the covenants of coverage are "subject to the . . . conditions . . . of this policy." One of such conditions reads as follows:

"The insured shall co-operate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits."

Shortly after the accident on September 11, 1954, Collins admitted to police officers, who investigated the same, that he was driving the car which struck the plaintiff pedestrian. Collins was arrested and charged with having failed to yield the right of way to a pedestrian, and he pleaded guilty to such offense.

On September 23, 1954, Collins gave a written statement to Badger's claims manager which described the accident. Such statement stated, "On September 11, 1954, at about 5:07 a. m. I struck a woman pedestrian at the intersection of 17th & Kilbourn." This statement then proceeded to give the details of Collins' operation of his car at the time of the accident. Pappas also furnished Badger with a signed statement on September 23, 1954, in which he stated that he had read Collins' statement and that the same "is true in all respects."

Some time in March, 1955, Badger was advised that there was some question as to whether Collins was in fact the driver of the vehicle which struck the plaintiff. Because of this, Badger's claims manager on March 24, 1955, obtained a second written statement signed by Collins in which he stated:

"The accident involving my car and Mrs. Caroline Kurz at 17th & Kilbourn, which occurred in September of 1954, happened while I was driving my car. *No one else was operating my car at the time.*" (Italics supplied.)

On the same day Collins executed a nonwaiver agreement wherein it was agreed "that no action heretofore or hereafter taken by" Badger "shall be construed as a waiver of the right, if any, of" Badger "to deny liability."

A third statement was obtained from Collins on April 4, 1955, reading as follows:

"In previous reports to my insurance company, Badger State Casualty Co., Ltd. Mut., I had indicated that I was driving my car at the time of the accident. *These reports are not true,* the fact being that I was not operating my car, but was merely a passenger. George Pappas was operating the car.

"I had picked him up at his home that morning and he drove from there until the accident. I was teaching him to drive and he had driven my car on previous occasions, but

only when I had been with him. To my knowledge, George had no driver's license, temporary driving permit, or other such document issued to him by public authorities which permitted him to operate a car.

"*At the time I figured that the best thing to do was to state that I was driving and I was fined, in George's place, for failing to yield the right of way to a pedestrian.* I later convinced myself that it would be best to set the record straight by saying that I hadn't been driving at the time." (Italics supplied.)

Thereafter, on April 13, 1955, Badger obtained a second signed statement from Pappas in which he stated as follows:

"Sometime in September, 1954, I gave a statement to the Badger State Casualty Co., Ltd. Mut., in which I said that I was a passenger in the car driven by Robert Collins on September 11, 1954, when it was involved in an accident with a pedestrian at the intersection of 17th & Kilbourn.

"The statement I gave that day is true and correct. I was not driving Robert Collins' car on September 11, 1954, when the accident occurred. *I only drove his car once and that was down at the lake front when he was giving me a lesson.* I do not have a driver's license." (Italics supplied.)

Collins later, on December 5, 1955, testified upon his adverse examination by the plaintiff as follows: When Collins and Pappas left the home of the latter on the morning of the accident, Collins drove the car. Later, but prior to the accident, Collins stopped the vehicle and Pappas took the wheel and drove. When Collins observed that the automobile, as operated by Pappas, was about to strike the plaintiff, Collins grabbed the wheel and turned the car sharply to the left and at the same time "reached for the brake" and applied the brake.

No adverse examination was then taken of Pappas because he was not then a party to the action. However, Pappas later, under date of April 11, 1957, verified his answer to the

amended complaint, which was drafted and filed by his separate counsel, the firm of Murphy, Shapiro & Gorsky. Such answer in one paragraph "admits that the automobile operated by this defendant [Pappas] collided with the person of the plaintiff." In another paragraph of the answer it is alleged that at the time of the accident Pappas was behind the wheel, but that immediately prior to the collision Collins grabbed the wheel and applied his foot to the brakes. Because of this it is further alleged that the car was then not under the control of Pappas but was under the control of Collins.

From the foregoing statement of facts it conclusively appears that both Collins and Pappas gave false statements to Badger as to the fact of who was operating the car at the time of the accident. The plaintiff's brief attempts to rationalize the discrepancies in the various conflicting statements on the ground that an ambiguous situation existed as to which of the two really was operating the car at the time it struck the plaintiff. This is because Pappas was seated behind the wheel and had been driving the car, but an instant before the impact Collins grabbed the wheel and put his foot on the brakes. However, such rationalization does not explain away certain specific false statements.

At the time Collins gave his March 24, 1955, statement Badger had information that Collins had not been driving, and for this reason asked for a further statement from Collins. In this further statement Collins said the accident happened "while I was driving my car. *No one else was operating my car at the time.*" The italicized sentence is clearly irreconcilable with the possibility that Pappas was seated behind the wheel as the driver.

Likewise Pappas' statement on April 13, 1955, that he was not driving Collins' car on September 11, 1954, and had only driven such car once and that was down at the lake front,

cannot be harmonized with his verified answer in which he admits that he did operate this car on September 11, 1954, and was behind the wheel at the time of the accident.

This court has held that co-operation on the part of an insured, under a policy condition reading as does the one here before us, requires "a fair, frank, and truthful disclosure of information." *Hoffman v. Labutzke* (1940), 233 Wis. 365, 374, 289 N. W. 652, and *Buckner v. General Casualty Co.* (1932), 207 Wis. 303, 309, 241 N. W. 342. We further adopt the statement made in *Ocean Accident & Guarantee Corp. v. Lucas* (6th Cir. 1934), 74 Fed. (2d) 115, 117, that, in order for failure of co-operation to be grounded upon variance in statements made by the insured, such variance "must not be only material, but 'conscious.' " Such latter case further holds that in order for a false statement to be made consciously it must be "a deliberate and wilful falsification."

The question of whether there has been a breach of a co-operation clause of an insurance policy because of the insured having given a false statement or testimony presents a mixed question of fact and law. The issue of whether such alleged false statement or testimony was consciously or deliberately made or given is a question of fact ordinarily to be determined by a jury. On the other hand, whether the same is material is a question of law to be resolved by the court and not a jury. However, sometimes the facts are so clear that the false statement or testimony was consciously or deliberately made that there is no issue to submit to a jury. We consider this to be such a case. Therefore, there remains for determination only the factor of materiality.

When it is stated that a false statement or testimony must be material in order to breach a policy co-operation condition, it means that the same must be material to the issue of the liability of the company on its policy. In a sense, whether a false statement or testimony is material to the

insurance company's liability on its policy is closely akin to whether the company has been prejudiced thereby, but we deem materiality to be broader in scope than prejudice. In *Hunt v. Dollar* (1937), 224 Wis. 48, 54, 271 N. W. 405, this court stated, "In cases of breach of condition it is immaterial whether the breach in fact prejudices the insurer." We consider this declaration to have been unintentionally misleading. It is apparent from the context in which such sentence appears in the opinion that what the court was attempting to say was that it is immaterial that the insurer was not in fact prejudiced. We cannot imagine a false statement, which was consciously and deliberately made by the insured and which in fact did prejudice the insurer, which would not be held to be material.

At first blush it would not seem to be material to the issue of the insurer's liability whether Collins, the insured, or Pappas, the additional insured, was operating the car at the time it collided with the plaintiff pedestrian, especially if corrected prior to trial. In either event, the insurer would be liable under its policy if the operator were negligent and such negligence exceeded that of the plaintiff, if any. Such a view apparently has been adopted by a number of courts as appears from the annotation entitled, "Liability insurance: misstatement by insured, later withdrawn or corrected, as breach of co-operation clause," 34 A. L. R. (2d) 264. We quote from page 272 of such annotation as follows:

"Misstatements by the insured as to the identity of the person driving the car involved in an accident, withdrawn or corrected prior to the trial of the action against the insured, have been held not to constitute a breach of the co-operation clause."

However, Wisconsin and Louisiana are unique in permitting direct suit against an automobile liability insurer by the injured party without judgment first having been ob-

tained against the insured. Therefore, in most co-operation cases arising in other jurisdictions the liability issue with respect to the insured has already been litigated prior to trial of the co-operation issue. The holding in the cases cited in Anno. 34 A. L. R. (2d) 264, in support of the above-quoted text can be explained on the ground that the insurer did not establish therein any prejudice to have resulted to it from the false statement of the insured as to who was driving, which statement was corrected or withdrawn prior to trial.

That there can be a situation where a false statement or prior testimony as to who was driving, which is later corrected before trial, may be material is illustrated by the case of *Quisenberry v. Kartsonis* (Mo. 1956), 297 S. W. (2d) 450. In that case the insured and her brother gave false testimony in a deposition in which they stated that she, and not the brother, was driving the insured car at the time of the accident. Later, and before trial, both she and her brother gave written statements to the insurance company in which they stated that the brother had been the driver. The same argument was advanced as in the instant case, that there had been no prejudice to the insurer. The court determined that it was not necessary to decide the issue of whether a showing of prejudice was necessary because there was prejudice present as a matter of law. We quote from the court's opinion as follows (297 S. W. (2d) 454):

". . . it needs no argument to sustain the proposition that insurer's counsel would have been substantially prejudiced in a material respect when at the trial of plaintiff's damage suit the credibility of each of its two witnesses, insured and her brother, was impeached by their prior sworn testimony contrary to their trial testimony."

In the instant case, counsel for the plaintiff would have the right on cross-examination to ask Collins and Pappas if they had given any written statements of the facts of the

accident to anyone prior to trial. If they answered such question honestly, a request could be made to counsel for Badger to produce such statements, and when so produced such statements could be used to impeach the two witnesses. Therefore, should such prior statements be used for impeachment purposes at the trial of the instant case, there could be no doubt of their materiality and of the consequent breach of the co-operation clause.

The question which confronts this court is whether the future possibility of the false statements of Collins and Pappas being used at the trial for impeachment purposes requires a determination that such statements are material. We think not. This is because we cannot view the issue solely from the standpoint of the two contracting parties, the insurer and the insured. The interests of third parties who have been injured or damaged as a result of the negligent operation of the insured vehicle must also be considered. Certain statutes enacted by the legislature have clearly enunciated such a public policy. *Pavelski v. Roginski* (1957), 1 Wis. (2d) 345, 350, 84 N. W. (2d) 84. We deem that such public policy requires that, where the rights of an injured third party have intervened subsequent to the issuance of the contract of insurance, the insurer should not be freed from liability to such third party, on the ground of non-co-operation of the insured in having made a false statement, unless the insurer has been harmed thereby. We, therefore, do not consider that these false statements made by Collins and Pappas, as to which one was driving, should be held to be material on the mere contingency of some harm happening in the future to the insurer which may never occur.

It is our considered judgment that the materiality of these false statements cannot be determined on the motion for summary judgment before trial, but is properly to be de-

termined by the trial court after trial of the negligence liability issue.

### Collins' Failure to Verify Answer.

On August 3, 1956, Collins called at the office of counsel for Badger and a conference was there had with him as to the nature of the allegations and denials to be set forth in his proposed answer to the amended complaint. Badger's counsel then proceeded to draft such an answer and submitted it to Collins' personal attorney for approval. On August 23, 1956, Collins' personal attorney returned such proposed answer to counsel for Badger together with a letter approving the same. Counsel for Badger then wrote a letter to Collins requesting that he call to verify this answer. The letter was addressed to the place where Collins had for some time resided and counsel's return address was on the envelope. Not hearing from Collins in response thereto, counsel for Badger again wrote to Collins under date of October 4, 1956, requesting him to call and verify the answer. This second letter was similarly addressed to Collins at the same address in an envelope bearing the return address of the senders. Collins failed to make any response to such letter, and neither letter was returned by the post-office department.

It is rumored that Collins left Milwaukee and went to Minneapolis to seek employment. The building to which the letters of August 23, 1956, and October 4, 1956, were addressed is occupied by a number of persons on a temporary or transient basis. Therefore, the question of responsibility for caring for uncalled-for mail is difficult, if not impossible, to place.

On this record, counsel for Badger request a determination that there has been a breach of the co-operation condition of the policy on the ground that Collins wilfully refused to

verify the answer prepared in his behalf. This we do not feel warranted in doing. A question of fact exists as to whether Collins ever received either letter. This in itself prevents the issue from being determined on a motion for summary judgment.

*Failure of Pappas to Give Notice and Forward Summons.*

Other conditions of the insurance policy required the insured, which includes the additional insured, to give prompt notice to the company of commencement of suit against the insured and to "immediately forward to the company every . . . summons . . . received by him."

Badger contends that Pappas breached both of such conditions. Again keeping in mind that the rights of injured third persons are an element to be considered, we are of the opinion that the breach of any condition of the policy should not relieve the insurer from liability to such injured third party unless the breach is material. It is obvious that any breach by Pappas of these conditions could not have been material.

Because Badger was originally made a party to the action, Badger was also served with the amended summons and complaint when Pappas was added as an additional defendant. It would have served no useful purpose for Pappas to have notified Badger of the commencement of suit against him or to have forwarded to Badger the copy of the amended summons and complaint, of which Badger already had its own copy.

*Effect of Filing SR-21.*

It is the contention of the attorneys for the plaintiff that Badger, by reason of filing an SR-21 with the motor vehicle department, is precluded from raising any defense based upon breach of conditions of the policy. The grounds upon

which this court has sustained the action of the trial court in denying Badger's motion for summary judgment make it necessary that Badger's defense of failure of co-operation be later tried on the merits. For this reason we deem it advisable that we pass upon this issue of the effect of the filing of the SR-21 upon Badger's defense of non-co-operation.

In *Behringer v. State Farm Mut. Automobile Ins. Co.* (1957), 275 Wis. 586, 593, 82 N. W. (2d) 915, this court declared:

". . . when a company has through an authorized officer, employee, or agent filed an SR-21 with the commissioner for the purpose of complying with the Safety Responsibility Law, the company cannot thereafter deny liability upon its policy because of any act occurring, or fact existing, *as of the time of such filing, which it then knew, or could have known through the exercise of due diligence.*" (Emphasis supplied.)

This same idea was reiterated at page 594, where it is stated:

". . . an insurance company, which files an SR-21, is barred from asserting an exclusion clause in its policy as a defense, if, in order to do so, it must rely upon the occurrence of facts which it could have discovered by the exercise of due diligence within the sixty-day period allotted by statute for the filing of the SR-21."

There is a dispute in the affidavits before us as to whether Badger filed the SR-21 in October, 1954, or January, 1955, but we deem this conflict to be immaterial. If the later date of filing be accepted, Badger did not know, or have any reason to know, at that time of the falsity of any statements made prior thereto by Collins and Pappas. Further false statements were made by both after such date. The incident with respect to Collins' alleged failure to verify the answer also did not occur until long after January, 1955. In view

of these facts we consider it would be highly inequitable if Badger were held to be precluded from raising its defense of breach of the condition of the policy requiring co-operation of the insured. It is, therefore, our considered judgment that the filing of the SR-21 by Badger does not bar it from relying upon its defense of breach of the co-operation condition of the policy.

*By the Court.*—Order affirmed.

FAIRCHILD, J. (*concurring*). I concur in the result and in most of what is stated for the court by Mr. Justice CURRIE. I would prefer that the court had not dealt with the question of the SR-21 until the question was necessarily before us and more fully briefed and argued.

The court is now apparently deciding that material failure of the insured to co-operate with the insurer first occurring or first discoverable with due diligence after the filing of an SR-21 deprives the injured plaintiff of recovery against the insurer for the insured's negligence. Very properly, such failure should deprive the insured of protection and may give rise to a cause of action in favor of the insurer and against the insured if the insurer is nevertheless required to pay, but it is not so obvious to me that it should defeat the injured plaintiff. Under the Safety Responsibility Law, sec. 85.09 (5) to (16) (c), Stats. 1953, the license of the operator and the registrations of the owner were to be suspended unless security sufficient to satisfy a judgment were deposited. This requirement was made inapplicable however if the owner "had in effect at the time of such accident an automobile liability policy with respect to the motor vehicle involved in such accident."

The following questions seem to me to call for more thorough consideration: (1) Does the statute contemplate that a policy, which was "in effect at the time of such acci-

dent," can be made ineffective as to the accident by the insured's breach of conditions after the accident? (2) If the statute exempts an operator or owner from depositing security where a policy is in effect at the time of the accident, but is so construed as to permit the policy to become ineffective by breach of conditions as to co-operation, would the exemption (so construed) be unconstitutional?

As said in *Behringer v. State Farm Mut. Automobile Ins. Co.* (1957), 275 Wis. 586, 592, 82 N. W. (2d) 915, "Keeping in mind the objective of the law, if a policy of existing automobile liability insurance is to be relied upon as the source of compensating the person who has sustained damage or injury, surely the legislature intended this to be as effective for such purpose as the alternative method of depositing security with the commissioner." The court went on to point out that the legislature had left a loophole in accomplishing the result. Where the loophole can reasonably and properly be minimized or eliminated by construing the statute in the light of its purpose, that ought to be done.