Aetna Casualty & Surety Company
and Arthur Zafer Roback,
Petitioners-Plaintiffs,
Tennessee Farmers Mutual Insurance Company,
Petitioner-Defendant,

*v.*

Anthony Martinez et al., Respondents-Defendants.

475 S.W.2d 663

(*Knoxville*, September Term, 1971.)

Opinion filed January 17, 1972.

J. H. DOUGHTY, HODGES, DOUGHTY & CARSON, Knoxville, for Aetna Casualty & Surety Company.

CALVIN N. TAYLOR, CHEEK, TAYLOR & GROOVER, Knoxville, for Arthur Zafer Roback.

ANDREW JOHNSON, KRAMER, DYE, GREENWOOD, JOHNSON, RAYSON & McVEIGH, Knoxville, for Tennessee Farmers Mutual Insurance Company.

PAUL E. PARKER, O'NEIL, PARKER & WILLIAMSON, Knoxville, for respondents.

MR. CHIEF JUSTICE DYER delivered the opinion of the Court.

This case, filed under our Declaratory Judgment Statutes, T.C.A. sec. 23-1101, et seq., comes to this Court by grant of the writ of certiorari to the Court of Appeals.

The contest is essentially between insurance companies and a statement of the facts and insurance coverage provided the different parties will help clarify the issues.

There is no serious dispute as to the facts. The father of one of the parties, Arthur Roback, had for a number of years rented a small lot of land near the TVA & I Fair held yearly in Knoxville, Tennessee, for the purpose of parking automobiles for those attending the fair and for which he received a fee of $2.00 per car. This business was operated generally in September of each year for a period of eight days. In September, 1968, the father was ill and his son, Arthur Roback, obtained a leave from his usual employment to take over this parking operation for his father. Arthur Roback was in full charge of this parking during this eight days in September, 1968, working thirteen to sixteen hours a day, parking and moving automobiles and collecting these fees. These fees, less expenses, were turned over by Arthur Roback to his father. The automobiles were parked on this lot in such a manner as to often necessitate the moving of one of the automobiles by Arthur Roback in order that another automobile could be driven off the lot. To accomplish this it was necessary that those parking on this lot leave the keys in their automobiles.

On a day in September, 1968, while Roback was operating this parking lot, Steve Brantley drove his 1960 Chevrolet on this lot, paying his fee to park, and at the request of Roback left his keys in the automobile. During the time this 1960 Chevrolet was on this lot Roback found it necessary to move it in order for another automobile parked on the lot to get out. In moving the 1960 Chevrolet, Roback drove it out into the street and was in-

volved in a collision with an automobile driven by Anthony Martinez, resulting in personal injuries to Anthony Martinez and Anna Martinez, a passenger at the time in the Martinez automobile.

As a result of this accident Anthony Martinez and Anna Martinez brought suit for personal injuries in the Circuit Court for Knox County against Aetna Casualty & Surety Company, Arthur Roback, and Edith Brantley, the titled owner of the 1960 Chevrolet. Upon demand, the Tennessee Farmers Mutual Insurance Company and The Home Insurance Company refused to provide any coverage under their policies issued to Edith Brantley and Arthur Roback.

Upon this refusal by Tennessee Farmers Mutual Insurance Company and The Home Insurance Company, Aetna and Roback filed the suit now before the Court against Anthony Martinez, Anna Martinez, Edith Brantley, Tennessee Farmers Mutual Insurance Company and The Home Insurance Company seeking to have the court declare Roback was insured (1) under the non-owned automobile provision in the policy issued to Roback by The Home Insurance Company, and (2) as a permittee under Tennessee Farmers Mutual Insurance Company's policy issued to' Edith Brantley.

The insurance coverage afforded the parties involved is as follows:

Roback, as named insured, had coverage for public liability under a policy issued by The Home Insurance Company covering the use of a non-owned automobile, except where maintained or used by the insured when "employed or otherwise engaged in the automobile busi-

ness.'' This policy defined automobile business as, among other things, the ''storing or parking automobiles.''

Edith Brantley was the title owner of the 1960 Chevrolet and had a public liability policy on this automobile issued by Tennessee Farmers Mutual Insurance Company. Steve Brantley was the eighteen-year-old son of Edith Brantley and Tennessee Farmers Mutual Insurance Company had knowledge Steve was to operate and use this automobile, having general unrestricted use thereof.

The Tennessee Farmers Mutual Insurance Company policy provided coverage to Edith Brantley as named insured and to ''(3) any other person using the automobile with the permission of the named insured provided his actual operation or (if he is not operating) his actual use thereof is within the scope of such permission . . . .''

The Tennessee Farmers Mutual Insurance Company policy provided this insurance would not apply under,

(c) coverages A (Bodily Injury Liability) and B (Property Damage Liability), except as to the named insured, to the automobile while used in an automobile business, except coverages A and B shall apply, as excess insurance over any other collectible insurance, to a resident of the same household as the named insured, to a partnership in which such resident or the named insured is a partner, or to any partner, agent or employee of the named insured, such resident or partnership; . . . .

As in The Home Insurance Company policy the Tennessee Farmers Mutual Insurance Company policy de-

fined "automobile business" as, among other things, the "storing or parking automobiles."

The Martinez automobile was covered by a public liability policy issued by Aetna Casualty & Surety Company which, among other things, contained an uninsured motorist provision.

■ The first issue for determination is whether Roback was operating the 1960 Chevrolet, at the time of the collision, while engaged in the "automobile business" within the meaning of this exclusion as contained in both The Home Insurance Company and Tennessee Farmers Mutual Insurance Company policies. On this issue the trial court and the Court of Appeals found in the affirmative, and we agree. The Court of Appeals said:

> Without question in our mind, Arthur Roback's access to the Brantley automobile and the necessity for him to drive the Brantley automobile arose out of and was a part of the business of "parking automobiles," which under the policy definitions of "automobile business" brings into play the policy exclusions set out above, .... The fact that Roback operated the parking lot for only 8-days a year and then only to assist his father is not sufficient to take him from under the policy exclusions. The key to coverage is the nature of the use of the automobile by Roback at the time of the accident. As pointed out by the court in *Allstate Ins. Co. v. Hoffman*, 21 Ill.App. [2d 314] 214, 158 N.E.2d 428, 430, "it is not uncommon for an insured to have a business in addition to his regular and customary occupation which he may pursue primarily or even wholly for purposes other than pecuniary gain; but such collateral business would nonetheless constitute a business or an

occupation while so pursued." See also *Seaford v. Nationwide Mutual Insurance Co.*, 253 N.C. 719, 117 S.E.2d 733 and *Voelker v. Travelers Indemnity Co.*, (CA 7 Ill.) 260 Fed. [2d] 275.

Upon holding Roback at the time of the collision was engaged in the "automobile business" the Court of Appeals, as to The Home Insurance Company policy, stated:

> The policy issued Roback by Home Insurance Company is an "owner's" policy and provides the coverage required by the Financial Responsibility Act for such a policy. T.C.A. 59-1223(b) (2). The limitation placed on coverage of the insured under the policy was limited to the use or maintenance of a non-owned automobile by the insured while the insured "is employed or otherwise engaged in the automobile business."

> This court has held that such an exclusion is reasonable in view of the increased hazard growing out of the use of non-owned automobiles by a person operating a parking lot or a parking garage. *Pollard v. Safeco Insurance Company*, 52 Tenn.App. 583, 376 S.W.2d 730.

> "Exclusionary clauses like the one here involved have been held reasonable because of the increased hazard growing out of the use of non-owned cars by such establishments while in their legal custody. Anno. 47 A.L.R.(2d) 556. They have been frequently applied under circumstances not unlike those presented in this case. Anno. 47 A.L.R.(2d) 558 et seq.; Insurance Law and Practice, Appelman, Vol. 7, Section 4372; 5A Am. Jur. 103, Automobile Insurance, Section 102. * * *

> "* * * It would be grossly unfair to the insurer to hold that an insured engaged in the automobile business could take out a policy on his privately owned and op-

erated car and then on the basis of the same small premium claim protection for any and all un-owned automobiles used in such business. Policies of that nature providing general coverage for such business carry a much higher premium rate." *Pollard v. Safeco Insurance Company,* supra, at pages 587 and 593. [376 S.W.2d 730]

As to the Tennessee Farmers Mutual Insurance Company policy the Court of Appeals found under the facts of this case Roback had actual permission of Steve Brantley to drive the 1960 Chevrolet for the limited purpose of moving it to permit passage of other automobiles on the parking lot and had implied permission of the named insured, Edith Brantley, to drive this automobile for that purpose. The Court of Appeals then noted this policy made no attempt to limit the class of permittees, but did undertake through the exclusion (copied above) to limit the scope of coverage afforded a permittee and to give the permittee less coverage than was given the named insured. The Court of Appeals, apparently with great reluctance, felt this exclusion as to the scope of coverage afforded a permittee was void under our opinion in *Commercial Union Insurance Co. v. Universal Underwriters Insurance Company,* 223 Tenn. 80, 442 S.W.2d 614 (1969), and that the Tennessee Farmers Mutual Insurance Company policy afforded coverage to Roback.

The holding in *Commercial Union Insurance Co. v. Universal Underwriters Insurance Company,* supra, which the Court of Appeals felt compelled the result it reached as to the Tennessee Farmers Mutual Insurance Company policy is to this effect: That this policy had been approved and was on file with the Department of

Insurance and Banking of the State of Tennessee, the result being our financial responsibility statutes, particularly T.C.A. sec. 59-1223(b) (2) must be read into and considered a part of the policy. This exclusionary clause being in conflict with this statute, such was void.

The Court of Appeals opinion was prepared and filed prior to release of our opinion in *McManus v. State Farm Mutual Automobile Insurance Co.*, 225 Tenn. 106, 463 S.W. 2d 702 (1971). In McManus we expressly overruled the holding in *Commercial Union Insurance Co. v. Universal Underwriters Insurance Company*, supra, relied upon by the Court of Appeals.

██ ██ Under this record neither The Home Insurance Company nor the Tennessee Farmers Mutual Insurance Company policies were certified policies within the meaning of our Financial Responsibility Statute, T.C.A. secs. 59-1201 to 59-1240, and this Chapter is not applicable in the decision of this case. The question here then is whether this exclusion in the Tennessee Farmers Mutual Insurance Company policy as to use of the automobile in the "automobile business" relieves Tennessee Farmers Mutual Insurance Company from any liability to afford coverage to Roback. To remove a problem we should note in this declaratory judgment suit no issue is made as to coverage afforded the named insured under the Tennessee Farmers Mutual Insurance Company policy.

The language of this exclusion in the Tennessee Farmers Mutual Insurance Company policy is not ambiguous. When the insured automobile is used in the "automobile business" the named insured is covered and as to a certain group of persons identified in the exclusion the scope of coverage is reduced. As to all others, the group into

which Roback falls, there is no coverage. This exclusion is reasonable for the same or similar reasons and under the authority cited above in this opinion holding the exclusion in The Home Insurance Company policy valid.

■ It is insisted The Home Insurance Company is estopped to deny coverage to Roback because of its failure to respond to a notification from the Financial Responsibility Division of the Department of Safety that Roback had filed an SR-21 form stating he had automobile liability coverage under the policy issued by Home. On this issue the Court of Appeals, with which we agree, said:

The majority of the courts which have dealt with this question have held that the act of an insurance company in filing an SR-21 form, or in some other manner confirming insurance coverage of an accident, does not estop the company from thereafter disclaiming coverage where none exists under the policy. *Seaford v. Nationwide Mutual Insurance Co.,* 253 N.C. 719, 117 S.E.2d 733; *State Farm Mutual Automobile Insurance Co. v. Hubbard,* (272 Ala. 181), 129 So.2d 669; *Fidelity and Casualty Co. of New York v. McConnaughby,* [McConnaughy] 228 Md. 1, 179 A.2d 117; *Marley v. Lewis,* (189 Kan. 658), 369 P.2d 783; *Insurance Company of North America v. Atlanta* [*Atlantic*] *National Insurance Co.,* 329 F.2d 769 (4th Cir. Va.) See also: *Kurz v. Collins,* 6 Wis.2d 538, 95 N.W.2d 365. 7 Am.Jur.2d, Automobile Insurance, Section 7, p. 299.

As succinctly pointed out in *Seaford v. Nationwide Mutual Insurance Company,* supra, [117 S.E.2d] at page 737,

"The purpose of the SR-21 form . . . seems to be a means of protecting one's driving privilege by proving insurance in the minimum amount required by this State, and was not intended to be a contract. The required filing of the SR-21 form does not show intent on the part of the Legislature that once the insurer files the form showing that the policy is in effect, such act affects the contractual rights of the parties, or precludes the insurance company from thereafter seeking to deny its liability under the policy.

"The plaintiff contends that the filing of the SR-21 form should have the effect of estopping the insurer from later denying coverage under the policy, and cites a Wisconsin case, *Behringer v. State Farm Mutual Auto. Ins. Co.*, 275 Wis. 586, 82 N.W.2d 915, in support of his contention. As a result of the holding in the Behringer case, supra, the laws of Wisconsin were amended so as to change the holding of that case. Indeed, since the law has been changed in Wisconsin the Supreme Court of that state has allowed the insurance company to raise a defense subsequent to the filing of the SR-21 form. *Kurz v. Collins,* 6 Wis.2d 538, 95 N.W. 2d 365.

"The better rule seems to be that by the mere filing of an SR-21 form as required by the law of this State, the insurer is not estopped to later deny coverage under the policy."

It results, and we so hold, that Tennessee Farmers Mutual Insurance Company and The Home Insurance Company are relieved of any liability arising out of the suit in the Circuit Court wherein Anthony Martinez and Anna Martinez, as plaintiffs, are attempting to recover

damages from the defendants therein, Aetna Casualty and Surety Company, Arthur Roback and Edith Brantley.

CRESON, HUMPHREYS and McCANLESS, JUSTICES, and JENKINS, SPECIAL JUSTICE, concur.